**MERCY HOSPITAL**

v.

**MAINE HEALTH CARE FINANCE COMMISSION.**

Supreme Judicial Court of Maine.

Argued May 12, 1989.
Decided May 31, 1989.

Gordon K. Gayer (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiff.

Charles F. Dingman (orally), Charles M. Cohen, Health Care Finance Com'n, Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

HORNBY, Justice.

■ In determining what patient revenues a Maine hospital may collect, the Maine Health Care Finance Commission must calculate in advance the impact of inflation ("economic trend factor") and account for that factor in its projection of a hospital's financial requirements for the fiscal year ahead ("payment year"). The Commission may make further adjustments during the course of a payment year if the initial inflation projections are in error. 22 M.R.S.A. § 396–D(1) (Supp.1988). In addition, the Commission must adjust a hospital's projected financial requirements to reflect "the reasonable impact on a hospital's costs" of certain unforeseen events when they occur. 22 M.R.S.A. § 396–D(9)(B). The Commission has interpreted this statutory scheme to mean that if a cost increase is the sort that falls under the economic trend factor, the Commission need not also consider it under the unforeseen events category even though it would otherwise fit there. Concluding that this is a reasonable interpretation of the statute by the agency charged with its administration, we vacate the judgment of the Superior Court (Kennebec County, *Brody, C.J.*) and reinstate the determination of the Commission.

The Maine Health Care Finance Commission is an independent executive agency charged with the regulation of hospital revenues. 22 M.R.S.A. §§ 381(2), 383, 386 and 396 (Supp.1988). It sets, in advance, annual limits on the gross patient service revenues each Maine hospital may collect. A hospital's fiscal year for these purposes is called a "payment year." The revenue limits are designed to permit a hospital to charge a total amount that will yield net revenue equal to the hospital's financial requirements. 22 M.R.S.A. §§ 396(2), 396–F, 396–G and 396–H (Supp.1988). These financial requirements are adjusted annually, and in certain circumstances interim adjustments can be made. In making adjustments under section 396–D the Commission is directed to consider nine different factors including changes in: the impact of inflation; types of illnesses; facilities and equipment; volume of services; projects covered by the Certificate of Need Act; productivity; increases in accounts receivable; termination, merger or consolidation of services; and "other adjustments" including such items as improvements in management information systems, new regulatory costs and, of critical importance to this case, "an adjustment for the reasonable impact on a hospital's costs of events ... which were reasonably unforeseen by the hospital and which were beyond the control of the hospital." § 396–D(9)(B).

For its second payment year, Mercy Hospital received an upward adjustment of 4.71 percent for projected overall inflation under the economic trend factor. This resulted in an allowance of $1,212,636. During that year, however, Mercy's umbrella insurance premium costs actually increased 211.5 percent, or $219,425, over the first payment year. Because the cost component encompassing umbrella insurance had been assigned a value of only 4.4 percent, Mercy Hospital sought an adjustment under the unforeseen event category. The Commission agreed that the dramatic increase was an event that was reasonably unforeseen by the Hospital and beyond its control, but concluded that there was no "reasonable impact" on costs because the economic trend factor was designed to provide for such increases. It therefore denied the adjustment. The Superior Court reversed the Commission's order and the Commission has appealed.

It is unlikely that, in enumerating specific items for adjustment in a hospital's financial requirements in advance of the payment year and then providing a catchall for unforeseen events occurring during the payment year, the Legislature intended that specific items would fall into both categories. The more reasonable construction is that the unforeseen events category is designed to catch the sort of events that do

not fit within one of the specified criteria. The economic trend factor is specifically designed to deal with inflationary increases. It contemplates both upward and downward adjustment within the various categories of hospital cost classifications. It provides for interim adjustments if initial projections are substantially in error. To accept Mercy's argument that an isolated insurance cost increase must be considered under the unforeseen events category would mean as a practical matter that either 1) only upward adjustments will be considered (hospitals will seldom bring to the Commission's attention unforeseen events that result in lower costs); or 2) specific consideration will be required for each unforeseen price increase, measuring it against the upward and downward movement of all other costs of a hospital, thereby destroying the benefit of a generalized approach designed both to achieve stability in prices to patients and to avoid this kind of item-by-item, administratively expensive and inefficient review. We conclude, therefore, that it was reasonable for the Commission to determine that unforeseen events qualifying for treatment under a specific category such as the economic trend factor have, as a result, no "reasonable impact on a hospital's costs." Since the statute does not plainly compel a contrary reading, we defer to the Commission's interpretation. *York Mut. Ins. Co. v. Superintendent of Ins.*, 485 A.2d 239, 241 (Me.1984); *Bar Harbor Banking and Trust Co. v. Superintendent of the Bureau of Consumer Protection*, 471 A.2d 292, 296 (Me.1984).

The size of the increase, admittedly large here, does not affect this analysis. Thus, we do not review whether the jump in Mercy Hospital's umbrella insurance costs was adequately provided for within the projection for overall inflation.[1]

 The Commission has now changed its treatment of insurance costs effective with hospitals' third payment year. Under the new regimen, these costs will be passed through directly and not be subject to estimates and projections. We find no arbitrariness in the Commission's decision to apply these new procedures effective with the third payment year. The fact that Mercy Hospital's third payment year begins at a later date than that of another hospital to which it compares itself does not make the Commission's decision arbitrary.

We find it unnecessary to address the remaining issues.

The entry is:

Judgment of the Superior Court vacated and remanded for entry of judgment affirming the Commission.

All concurring.

---

1. Although Mercy Hospital only requested an adjustment under the unforeseen events provision, the Commission also determined that if it had been asked to grant an adjustment under the economic trend factor, no such adjustment would be warranted. Mercy Hospital has not challenged the substance of that determination.