Ethel AYOTTE

v.

UNITED SERVICES, INC. et al.

Arthur LADNER

v.

AROOSTOOK COUNTY ACTION PROGRAM et al.

Supreme Judicial Court of Maine.

Argued Oct. 6, 1989.
Decided Dec. 5, 1989.

James W. Claus (orally), Dunleavey Law Offices, P.A., Presque Isle, for appellants.

Michael Dostie (orally), Stephen T. Emery, Leen & Emery, P.A., Bangor, for appellees.

Patrick McTeague, McTeague, Higbee, Libner, Reitman, MacAdam & Case, Topsham, for amicus curiae, AFL–CIO.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN,

CLIFFORD, HORNBY and COLLINS, JJ.

PER CURIAM.

In this consolidated appeal from separate decisions of the Appellate Division of the Workers' Compensation Commission, Dunleavy Law Offices, P.A.,[1] of Presque Isle challenges the Commission's authority under the Workers' Compensation Act to regulate the fees an employee's attorney can charge a client for representation under the Act. Dunleavy is attempting to collect attorney fees from his employee clients, Ayotte and Ladner, in excess of those awarded by the Commission and paid by the employers' insurer in these cases. The Hartford Insurance Company [hereinafter "Hartford"] insures both employers and has opposed these appeals. Ayotte and Ladner, the injured employees, are not represented in these fee proceedings. Dunleavy fails to persuade us of any basis for disturbing the attorney fees decisions of the hearing commissioner, affirmed by the Appellate Division.

I.

*Ayotte v. United Services, Inc.*

On September 9, 1986, Ethel Ayotte injured her lower back while at work. Hartford accepted her claim, filed its memorandum of payment on October 14, 1986, and began to pay Ayotte $48.52 per week. Ayotte returned to work on November 12, 1986, and Hartford discontinued her benefits. Ayotte worked only three days before her chiropractor advised her that work was aggravating her injury. She retained Dunleavy on November 24, 1986. After some communication with Dunleavy, Hartford resumed paying Ayotte's benefits on January 13, 1987.

Hartford filed a notice of controversy on March 4, 1987, contesting its responsibility to compensate Ayotte for an elbow injury. The issue was resolved at an informal conference held on April 13, 1987, at which no party was represented by counsel. Hart-

ford filed another notice of controversy on August 10, 1987, contesting a similar claim, but the parties resolved the issue without another conference. By November 3, 1987, Ayotte had received about $2,500 in total benefits and Dunleavy had billed $1,851 on this case.

In January 1988 the parties began negotiating a lump sum settlement because Ayotte wanted to return to work. After opening negotiations with a demand of $50,000, Dunleavy offered to settle the case on February 17, 1988, for $8,500, contingent upon Hartford's paying Dunleavy's charges in the entirety. His fee had by that time grown to $2,273 and Hartford refused. The parties eventually negotiated a lump sum settlement in which Hartford would pay Ayotte $8,500 and Dunleavy $850.

On May 6, 1988, the same day that the parties were to appear before a hearing commissioner for approval of the settlement proposal, Dunleavy had Ayotte sign an agreement that required her upon receiving her settlement check from Hartford to pay an additional $996.51 to Dunleavy "in lieu of payment of attorney fees and expenses of $1,993.03." The extra fee would diminish her lump sum settlement by 12% and raise Dunleavy's percentage take on the settlement from 10% to 22%. The commissioner approved the settlement proposal but ruled that Ayotte need not pay Dunleavy any additional fee under the separate agreement. In response to Dunleavy's request for findings of fact and conclusions of law, the commissioner expressly found the additional billing of $996.51 excessive. In answer to Dunleavy's challenging the Commission's authority to regulate his fee, the commissioner held that:

> As a matter of law, part of the Commission's mandate under Section 110 and under Section 71 ... is to review the reasonableness of attorneys fees upon the submission of a lump sum settlement proposal. It is within the province of the Commission to review the reasonableness

1. It appears that James P. Dunleavy, Esq., the principal in Dunleavy Law Offices, P.A., was responsible for most, though not all, of the work in these cases. We will use his name to identify the one or more persons from his firm who performed services for Ayotte and Ladner.

of the fee requested by the employee's attorney, both from the insurance carrier and the employee. Further, the Commission has the authority to establish the appropriate fee amount, if that amount differs from the amount requested by the employee's attorney.[2]

Dunleavy took his challenge to the Appellate Division. Affirming the commissioner's award on April 3, 1989, the Appellate Division stated:

> Implicit in the Commission's legislative mandate and regulatory authority is the duty to oversee attorney's fees. In lump-sum cases, the Commission's authority must by necessity extend to an investigation of the reasonableness of fees charged to the employee. Otherwise, how would a commissioner determine whether or not the settlement was in the employee's best interest.
>
> The Commission has the responsibility to review, supervise and limit, if necessary, the attorney's fees to be paid by the employee. In this case the commissioner did exactly that.

Dunleavy argues on this appeal that the Commission had no authority to regulate the fees Ayotte agreed to pay in the separate contract. He also argues that the Commission's regulation of fees in this context would impede Ayotte's ability to retain counsel and so deny her equal protection of the laws. Since the "best interests" mandate of section 71 and the "prevail" rule of section 110(2) both empower the Commission to regulate Dunleavy's entire fee in this case, we find no legal error in the commissioner's decision.

### A. *39 M.R.S.A. § 71*

█ Under the "best interests" mandate of section 71, which applies to lump sum settlements under the Act, the Commission has regulated attorney fees consistently with our assertion in *Willet v. Hascal & Hall, Inc.*, 275 A.2d 247, 248 (Me.1971), that:

> No attorney representing an employee who prevails in a proceeding involving a controversy under this Act may receive any fee from that client for an appearance before the commission, including preparation for that appearance, except as provided in section 83, subsection 7 and section 94-B, subsection 3. Any attorney who violates this paragraph shall lose his fee and be liable in a court suit to pay damages to his client equal to 2 times the fee charged for that client.
> This subsection applies only to employees injured on or after the effective date of this subsection.
>     A. For the purposes of this subsection, "prevail" means to obtain or retain more compensation or benefits under the Act than were offered to the employee by the employer in writing before the proceeding was instituted. If no such offer was made, "prevail" means to obtain or retain compensation or benefits under the Act.
>     B. Any employee, employer or insurance carrier involved in any proceeding involving a controversy under this Act shall report to the commission, on forms provided by the commission, any amounts that he has paid for legal assistance in that proceeding, including any amount paid for an employee's legal fees under this subsection.
> Section 94-B(3), an exception to this statute relevant to this case, appears in pertinent part at n. 4 below.

---

**2.** The first of the sections cited by the commissioner, 39 M.R.S.A. § 71, provided that:

> Such petition [for approval of a lump sum settlement] may be granted where it is shown to the satisfaction of the commission that the payment of a lump sum in lieu of future weekly payments, or as an agreed compromise settlement of a disputed claim, will be for the best interests of the person or persons receiving or claiming such compensation.

Section 71 was repealed by P.L.1987, ch. 559, § B, eff. Nov. 20, 1987. Although section 71-A now controls lump sum settlements under the Act, this new provision expressly retains the "best interests" of the employee mandate. *See* 39 M.R.S.A. § 71-A(3) (1989).

The second section cited by the commissioner, 39 M.R.S.A. § 110(2) (1989), applies to injuries incurred after June 25, 1985, and provides that:

> If an employee prevails in any proceeding involving a controversy under this Act, the commission or commissioner may assess the employer costs of a reasonable attorney's fee and witness fees whenever the witness was necessary for the proper and expeditious disposition of the case.
> The employer may not be assessed costs of an attorney's fee attributable to services rendered prior to one week after the informal conference under section 94-B or, if the informal conference is waived, services rendered prior to the date of that waiver, unless a party adverse to the employee was so represented at that stage.

The legislature has placed with the Commission the duty of determining the justification for and the reasonableness of a fee for the employee's attorney and of assessing the employer with that amount. While the statute does not give the Commission an uncontrolled or arbitrary power, the amount to be allowed lies in the commissioner's discretion and the Court should interfere only if this discretion is abused.

See, e.g., Allen v. F.J. O'Hara & Sons, Inc., No. 88–33, at 2435 (Me.Workers' Comp.Comm'n App.Div. Mar. 13, 1988) ("Although the agreement of the parties is a significant factor to be considered in approving a fee, agreement of the parties does not deprive the Commission of jurisdiction over fees under 39 M.R.S.A. § 71").

The chairman of the Commission through the general supervisory powers granted by 39 M.R.S.A. § 92 (1989) has promulgated Me.Workers' Comp.Comm'n Regulation 22.-12(A), which provides that:

When there is a dispute between the parties concerning the attorney's fee, counsel for the worker shall file Form WCC–25, Motion for Award of Fees and Disbursements. This motion shall be served upon opposing counsel involved at the time of the disputed legal services or, if there was no legal representation, directly upon the opposing party. A motion shall be filed in the appropriate district office. Within 30 days following the receipt of this motion, the opposing party or counsel for the opposing party shall submit a written statement of objections to the fee for which payment is sought. Within 10 days following the receipt of the objections of the opposing party, counsel for the worker shall file a reply. The presiding commissioner shall issue an order assessing a fee. The commissioner shall consider at least the following factors in his determination: (1) the complexity of the issues presented; (2) the novelty of the questions raised; (3) the quality of the representation; (4) the time and labor required; (5) the skills and experience of the attorney; and (6) the benefits to the worker. The commissioner's fee order shall not be disturbed

on appeal unless it can be shown that it is arbitrary and capricious.

The chairman has also promulgated Me. Workers' Comp.Comm'n Regulation 22.-12(C), which provides that "[a]n employee's attorney may not receive a fee for a lump sum settlement pursuant to 39 M.R.S.A. § 71–A, regardless of the source, without Commission approval." These regulations give hearing commissioners concrete tools with which to control the proceeding and to protect the injured employee's interests down to the award of attorney fees, which do directly affect the net amount an injured worker receives in settlement or adjudication of a claim.

We have held that

the construction of a statute by an agency charged with enforcing it is entitled to great deference. [This court] shall accept the agency's construction, especially if ... it is long established or contemporaneous with the statute, unless it clearly violates the legislative intent.

Bar Harbor Banking & Trust Co. v. Superintendent of the Bureau of Consumer Protection, 471 A.2d 292, 296 (Me.1984) (citations omitted). See also Georgia–Pacific Corp. v. State Tax Assessor, 562 A.2d 672, 674 (Me.1989); Mercy Hosp. v. Maine Health Care Financing Comm'n., 559 A.2d 352, 354 (Me.1989); Kelley v. Halperin, 390 A.2d 1078, 1080 (Me.1978). The Commission's interpretation in these regulations of the "best interests" mandate of section 71 is entirely consistent with the legislative intent behind the Act, to compensate injured workers with a minimum of cost and delay. See Ciccotelli v. KTS Indus., 415 A.2d 1091, 1092 (Me.1980) (per curiam) ("[W]e remind the Bar and the Commission of the statutory mandate that the Commission's procedural orders shall assure 'a speedy, efficient and inexpensive disposition of all proceedings.' 39 M.R.S.A. § 92.") Regulation of the employee's attorney fee in lump sum proceedings under section 71 and its successors falls within the authority of the Commission.

B. *39 M.R.S.A. § 110(2)*

■ Contrary to the assertions of both Dunleavy and amicus A.F.L.–C.I.O., Ayotte

by her settlement in this case has also "prevail[ed]" within the definition of that term in 39 M.R.S.A. § 110(2).[3] That section provides that "[i]f an employee *prevails* in any *proceeding* involving a *controversy* under this Act, the commission or commissioner may assess the employer costs of a reasonable attorney's fee." (Emphasis added) Ayotte's receipt of benefits in a lump sum brings her within the definition of having "prevail[ed]" under the second sentence of section 110(2)(A) in that she has "obtain[ed] or retain[ed] compensation or benefits under the Act." The settlement process is a proceeding, "a prescribed course of action for enforcing legal rights and remedies." *Kennie v. City of Westbrook*, 254 A.2d 39, 43 (Me.1969). The controversies involved in Ayotte's receipt of benefits satisfy the final requirement under section 110(2) for regulation of fees. Hartford terminated Ayotte's benefits after she returned to work, and Ayotte hired Dunleavy to help resolve the problem. Hartford filed two separate notices of controversy, which resulted in one informal conference before the Commission. Having argued throughout this case that his services were instrumental in Ayotte's receipt of benefits and that the proceedings were controverted enough for him to generate a bill of $2,800, Dunleavy will not now be heard to argue that there was no controversy under the Act so as to trigger section 110(2). Thus the commissioner possessed statutory authority also under the prevail standard of section 110(2) to regulate the extra fee Dunleavy wanted to charge his client.

His employee client having prevailed in this case, Dunleavy becomes subject to the express fee regulating provisions of section 110(2), specifically that:

No attorney representing an employee who prevails in a proceeding involving a controversy under this Act may receive any fee from that client for an appearance before the commission, including preparation for that appearance, except as provided in section 83, subsection 7 and section 94–B, subsection 3. Any attorney who violates this paragraph shall lose his fee and be liable in a court suit to pay damages to his client equal to 2 times the fee charged for that client.

Section 110(2) also specifically exempts the employer from responsibility for the employee's attorney fee prior to one week following an informal conference [hereinafter "the informal conference period"] where, as here, no party adverse to the employee was actively represented by counsel during that period.[4] In this case the informal conference period ran from November 24, 1986, through April 20, 1987. Thus, in settling the entire attorney fee in this case at $850, Hartford paid not only its own share of the fee, but also that attributable to Ayotte for the informal conference period. Hartford, however, has not appealed the award and in fact negotiated the $850 fee.

▌ Finally, we find no merit in Dunleavy's contention that the Commission's regulation of the attorney fee in lump sum settlements violates equal protection provisions of the state and federal constitutions. The regulation of fees in this situation bears a rational relationship to the legitimate state purpose of protecting injured workers' best interests and does not violate constitutional guarantees of equal protection. *See B.P.O.E. Lodge No. 2043 of Brunswick v. Ingraham*, 297 A.2d 607, 616 (Me.1972), *appeal dismissed*, 411 U.S. 924, 93 S.Ct. 1893 *reh'g denied* 412 U.S. 913, 93

---

3. For the text of section 110(2), see n. 2 above.

4. The relevant part of 39 M.R.S.A. § 94–B reads as follows:

> **Representation.** In preparation for and at the conference, the commission shall assure that competent technical staff from the Office of Employee Assistants is available to provide advice and assistance to the employee.
> If at this stage the employer or insurer elects to be represented by legal counsel, the employee is entitled to be similarly represented

by legal counsel of his choice, with all reasonable attorney fees to be assessed against the employer. If no adverse party elects to be so represented, the employee retains the right to secure legal counsel *at his own expense.*

(Emphasis added) 39 M.R.S.A. § 83(7) makes identical provision for representation of the employee at any stage of the rehabilitation process prior to an appeal under section 88, but has no relevance on the facts of the present case.

S.Ct. 2288, 36 L.Ed.2d 977 (1973). *Accord Hudock v. Virginia State Bar*, 233 Va. 390, 393, 355 S.E.2d 601, 604 (1987); *Crosby v. State Workers' Compensation Board*, 57 N.Y.2d 305, 309, 456 N.Y.S.2d 680, 683, 442 N.E.2d 1191, 1194 (1982).

## II.

### *Ladner v. Aroostook County Action Program*

■ On June 8, 1987, Arthur Ladner injured his lower back while working. Hartford accepted the claim and filed a memorandum of payment on June 22, 1987, paying Ladner $154.45 per week. On July 15, 1987, Hartford filed a notice of controversy contesting Ladner's claim of ongoing total disability. Ladner retained Dunleavy on July 17, 1987, and chose to have Dunleavy represent him at an informal conference held before the commissioner on August 7, 1987. Neither Hartford, nor any other party adverse to Ladner, was represented by counsel at this conference.

Ladner had taken another job on August 3, 1987. The commissioner therefore recommended that Hartford pay Ladner two weeks of total disability and ongoing partial disability at 15%. Both parties accepted this recommendation. Hartford filed a memorandum of payment on August 12, 1987, sending Ladner a check for two weeks total disability and a form for discontinuance of total disability benefits. Hartford subsequently tried to negotiate a lump sum payment of $2,515 for the ongoing partial disability, which would have brought Ladner's total receipt of benefits for the injury to $3,750. On August 24, 1987, however, Dunleavy filed a petition for award on Ladner's behalf that implicitly rejected the settlement offer, corrected an error in Hartford's previous memorandum of payment regarding Ladner's ongoing disability, and again requested ongoing partial disability benefits. Hartford did not file an answer to the petition, but filed an open-ended memorandum of payment providing ongoing partial disability benefits to Ladner at $34.74 per week. Dunleavy unilaterally dismissed his petition for award without a formal hearing.

On September 25, 1987, Dunleavy sent Hartford a $2,453 bill for services rendered Ladner between July 17 and September 25. By this time, Ladner had received slightly over $1,575 in benefits from the Hartford; Dunleavy's bill for $2,453 was thus more than 1.5 times the amount of benefits Ladner had received. Hartford refused to pay this bill on the ground that it was excessive. By November 10, 1987, Dunleavy's very detailed bill had swelled to $3,488, even though there had been no subsequent controversies or problems with Ladner's receipt of benefits. Hartford again refused to pay the bill and complained to the Commission about Dunleavy's fees and billing practices.

Six months later on May 18, 1988, Dunleavy filed a motion for award of fees and disbursements claiming $4,409 in attorney fees and $140 in disbursements. By this time, Ladner had received a total of some $3,000 in weekly benefits. On July 12, 1988, the hearing commissioner awarded Dunleavy a fee of $350. In response to Dunleavy's subsequent petition for findings of fact and conclusions of law, the commissioner found that:

> Essentially, this case was resolved at the informal conference in all respects except with regard to some minor matters concerning the way in which the employee was to be paid ongoing partial compensation. The parties had reached an agreement as to all substantive aspects of the case within seven days of the informal conference. . . .
>
> Judged by any objective standard, this case presented no complex or difficult issues. Nor does it appear that the parties had any real dispute regarding the employee's entitlement to compensation payments after the informal conference. The services rendered by ... Mr. Dunleavy helped to reduce to writing, and on proper forms, the essence of the agreements reached by the parties at the informal conference.
>
> The attorney's fee claimed by the employee's attorney, in the total sum of almost $4,500.00, far exceeds the amount of recovery obtained by the employee to

date. On its face, the fee is excessive and unreasonable. This is particularly true in light of the fact that the employee's attorney is an experienced Workers' Compensation litigator who, in the course of his regular practice, should deal with these matters routinely and without extra effort.

The Commission determines that the sum of $350.00 is a fair and reasonable sum to be paid to the employee's attorneys for their efforts in behalf of the employee.

On appeal to the Appellate Division, Dunleavy argued that the commissioner's factual findings were insufficient to inform Dunleavy of his ability under sections 110(2) and 94–B(3) to bill Ladner for services rendered. On April 7, 1989, the Appellate Division affirmed the commissioner's decision, declaring:

> we conclude that the commissioner adequately explained the reasoning behind his award of attorneys fees and that there is no uncertainty either as to the employee prevailing in this matter or as to the amount of the award to which he was entitled.

Dunleavy's motion for award of fees only addressed fees to be paid by Hartford; Dunleavy never moved for any award of fees to be paid by Ladner. Indeed, in a letter to the commissioner on June 13, 1988, Dunleavy claimed that his client Ladner had prevailed in this case and that

> the issue becomes how much of the bill is the insurer's responsibility. We construe 39 M.R.S.A. § 110(2) to mean that the insurer owes the full bill. Dunleavy Law Offices interprets the seven day informal rule to mean only that the insurer cannot be billed prior to seven days after an informal conference. Once a prevail is established, however, the entire bill is the responsibility of the insurer.

That simply is not the law as laid down by the Workers' Compensation Act. Under 39 M.R.S.A. § 94–B(3), "the employee retains the right to secure legal counsel" during the informal conference period, but if no adverse party is represented by counsel in that period the employee must retain counsel "at his own expense." *See* n. 4 above. In those circumstances the employer or insurer becomes liable for the attorney fee for a prevailing employee only for the period after the informal conference period. As noted earlier, section 110(2) reiterates that "[t]he employer may not be assessed costs of an attorney's fee attributable to services rendered prior to one week after an informal conference under section 94–B ... unless a party adverse to the employee was so represented at that stage." Dunleavy did indeed represent Ladner at the informal conference held on August 6, 1987, and no party adverse to Ladner was represented by counsel at that conference. Ladner did, then, assume some financial responsibility for that representation, and under sections 110(2) and 94–B(3) was responsible for the expense of his counsel incurred up to one week after the informal conference period.

The commissioner awarded a fee in the amount of $350 to cover the entire services rendered by Dunleavy in connection with Ladner's claim and assessed that entire fee against Hartford. That was error to the extent that Hartford is required to pay Ladner's counsel fee for services during the informal conference period. Hartford, however, has not appealed, and obviously Dunleavy is not aggrieved by that order—except as to its amount. Implicit in sections 94–B and 110(2) is the authority of the Commission to regulate the amount of the fee payable to the attorney for the prevailing employee, whether the employer or insurer is liable for the fee or the employee must take it out of his workers' compensation benefits. Either way, the amount of the fee impacts directly on the total cost of the workers' compensation system and on the employee's net recovery under the Act. In view of the comprehensive nature of our statutory workers' compensation system, we cannot infer a legislative intent that an injured employee who prevails before the Commission must go to fee arbitration or to a plenary court suit to fix the fee he owes his own attorney for services under the Act.

In setting $350 as the total fee that could reasonably be charged by Dunleavy for all services rendered Ladner on his workers'

compensation claim, the commissioner foreclosed Dunleavy from collecting from the employee any more than the $350 Hartford is ordered to pay Dunleavy. The Appellate Division affirmed the commissioner's finding that any larger total fee would be excessive and unreasonable, and so do we.

■ Finally, we find no merit in Dunleavy's contention that the section 110(2) definition of "prevail" is unconstitutionally vague. A statute is void for vagueness only when "it sets guidelines which force men of general intelligence to guess at its meaning, leaving them without assurance that their behavior complies with legal requirements and forcing courts to be uncertain in their interpretation of the law." *Maine Milk Producers, Inc., v. Commissioner of Agriculture, Food, & Rural Resources,* 483 A.2d 1213, 1220 (Me.1984). *See also State v. Cropley,* 544 A.2d 302, 304 (Me.1988); *City of Portland v. Jacobsky,* 496 A.2d 646, 649 (Me.1985). Dunleavy concedes that Ladner prevailed according to the definition provided in section 110(2)(A). According to the clear language of that section, Dunleavy could not charge Ladner a fee except as allowed under section 94–B(3) or section 83(7). We have construed without any difficulty those sections so far as here relevant. "An attack on a statute for facial unconstitutionality due to vagueness will not be supported merely because some hypothetical situations may require future judicial interpretation of the statutory language." *Maine Milk Producers,* 483 A.2d at 1220.

The entry is:

Decision of the Appellate Division of the Workers' Compensation Commission in WCC–89–141, Ayotte v. United Services, Inc., *et al.,* affirmed.

Decision of the Appellate Division of the Workers' Compensation Commission in WCC–89–156, Ladner v. Aroostook County Action Program *et al.,* affirmed.

All concurring.