Paul MARSELLA

v.

BATH IRON WORKS CORP., et al.

Supreme Judicial Court of Maine.

Argued Oct. 1, 1990.

Decided Jan. 9, 1991.

Gary A. Gabree (orally), Stinson, Lupton & Weiss, P.A., Bath, for plaintiff.

Daniel B. Wyman (orally), Richardson & Troubh, Portland, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

BRODY, Justice.

Paul Marsella prevailed against Bath Iron Works Corporation, his employer, in a proceeding before the Workers' Compensation Commission in which he sought compensation for a back injury that occurred on July 13, 1987. Birmingham Fire Insurance Company, the insurance carrier, filed a timely notice of controversy on August 7, 1987.[1] The Commission held an informal conference on October 28, 1987, two months beyond the time within which it was required to be held by section 94–B of the Workers' Compensation Act.[2] The informal conference failed to resolve the controversy, and the case proceeded through the formal hearing process. The Commis-

---

1. Under the "early pay" system adopted by the Maine Legislature in 1983, compensation for work-related incapacity generally becomes due and payable within fourteen days after the employer has notice of the claim. 39 M.R.S.A. § 51–B(3) (1989). The employer must then begin making compensation payments unless he files a notice of controversy with the Commission within that time. *Id.* § 51–B(7) (Supp. 1990). Once the employer has begun making payments, he may cease payments and file a notice of controversy within forty-four days after receiving notice of the claim. *Id.*

2. Section 94–B provides in pertinent part:

   **1. Conference scheduled; waiver.** Upon filing of a notice of controversy, and instead of proceeding by way of a petition, the matter shall be referred to a commissioner, who shall schedule an informal conference to be

held no later than 3 weeks from the date of that filing. . . .

   . . . .

   **3. Representation.** In preparation for and at the conference, the commission shall assure that competent technical staff from the Office of Employee Assistants is available to provide advice and assistance to the employee.

   If at this stage the employer or insurer elects to be represented by legal counsel, the employee is entitled to be similarly represented by legal counsel of his choice, with all reasonable attorney fees to be assessed against the employer. If no adverse party elects to be so represented, the employee retains the right to secure legal counsel at his own expense.

39 M.R.S.A. § 94–B (1989).

sion issued an award of benefits to Marsella on October 14, 1988.

Marsella then moved for an award of attorney fees. The insurance carrier objected to a fee award for legal services rendered prior to one week after the informal conference was held on the ground that such an award was precluded by section 110(2) of the Act.[3] The Commission awarded Marsella attorney fees of $1,616.80, an amount reduced by $671.39 "for services prior to [the] informal conference." After the Commission denied Marsella's motion for findings of fact and conclusions of law, he appealed to the Appellate Division. The Appellate Division affirmed the Commission's decision, ruling that section 110(2) "is clear that the employer is not responsible to pay attorneys fees for services rendered prior to one week after the informal conference, regardless of when the informal conference is held."

On appeal to this court, Marsella requests that we revisit sections 94–B and 110(2) of the Workers' Compensation Act. Specifically, he asks us to construe section 110(2) to require the employer to pay the employee's attorney fees for the period beginning one week after the informal conference was required to be held by section 94–B instead of one week after it was actually held. Because such an interpretation would contravene the plain and unambiguous language of the statute, we decline to do so.

We need not delve into legislative history or policy considerations to determine the meaning of section 110(2) as read in conjunction with section 94–B. "In construing a statute our duty is to give effect to the intent of the Legislature as evidenced by the language of the statute. If the meaning of the language is plain, we must interpret the statute to mean exactly what it says." *Concord Gen. Mut. Ins. Co. v.*

*Patrons–Oxford Mut. Ins. Co.,* 411 A.2d 1017, 1020 (Me.1980). "Where the statutory language is plain and unambiguous, there is no occasion for resort to rules of statutory interpretation to seek or impose another meaning." *Central Maine Power Co. v. Public Utilities Comm'n,* 405 A.2d 153, 159 (Me.1979).

The language of the two provisions is clear. Section 94–B provides: "Upon filing of a notice of controversy, ... the matter shall be referred to a commissioner, who shall schedule an informal conference to be held no later than 3 weeks from the date of that filing." 39 M.R.S.A. § 94–B(1) (1989). Section 110(2) provides: "The employer may not be assessed costs of an attorney's fee attributable to services rendered prior to one week after the informal conference under section 94–B ... unless a party adverse to the employee was so represented at that stage." *Id.* § 110(2) (1989).

Although it might be expedient to add a judicial gloss to the statute and hold that a conference held beyond the statutory time frame does not constitute an "informal conference," such a construction would leave employees completely without remedy in the future. An informal conference is a necessary prerequisite to a hearing on a petition for compensation. The plain language of the statute cannot be so easily avoided.

We earlier read these statutory sections according to their unambiguous meaning in *Ayotte v. United Services, Inc.,* 567 A.2d 430 (Me.1989). There we said that "[s]ection 110(2) ... specifically exempts the employer from responsibility for the employee's attorney fee prior to one week following an informal conference ... where ... no party adverse to the employee was actively represented by counsel during that period." *Id.* at 434. We also said in *Ay-*

---

3. Section 110(2) provides in pertinent part:

> If an employee prevails in any proceeding involving a controversy under this Act, the commission or commissioner may assess the employer costs of a reasonable attorney's fee....

> The employer may not be assessed costs of an attorney's fee attributable to services rendered prior to one week after the informal conference under section 94–B ... unless a party adverse to the employee was so represented at that stage.

39 M.R.S.A. § 110(2) (1989).

*otte* that under section 94–B " 'the employee retains the right to secure legal counsel' during the informal conference period, but if no adverse party is represented by counsel in that period the employee must retain counsel 'at his own expense.' " *Id.* at 436 (quoting 39 M.R.S.A. § 94–B(3)).[4]

■ The fact that the Commission failed to hold an informal conference within three weeks after the filing of the notice of controversy does not make the statutory language less clear. Furthermore, reversing the Commission and the Appellate Division would be inconsistent with our duty to construe the statute in a neutral fashion.[5] We assume that the Commission does not intentionally delay the scheduling of informal conferences. The proper remedy to such unforeseen administrative delay, if one is needed, is legislative and should not be provided by judicial fiat.

The entry is:

Decision affirmed.

McKUSICK, C.J., and ROBERTS, WATHEN and CLIFFORD, JJ., concur.

COLLINS, Justice, with whom GLASSMAN, J. joins, dissenting.

The Workers' Compensation Commission, Appellate Division concluded that it "is clear that the employer is not responsible to pay attorneys fees *regardless of when the informal conference is held.*" (Emphasis added.) It dismissed the Legislature's clear command with a bland statement that "[a]lthough the Commission at-

tempts to schedule informal conferences within the time periods required by the statute, often times it is not possible."

Paradoxically, this Court now allows the Commission's confession of its inability to carry out its responsibilities to overcome both the plain meaning of the statute and the Legislature's purpose in enacting it. The Court's reading of the statute converts the informal conference process from a tool for early resolution of claims into a tool for delay—the worst fear of the Legislature that created it. The injured employee cannot initiate formal proceedings until after surmounting the informal conference hurdle, now made of indefinite duration. Moreover, in a system intended to resolve disputes without lawyers, the Court now forces the injured employee to seek mandamus if he would enforce his right to an informal conference within the mandatory period. I must dissent.

The Court asserts its reliance on the plain meaning of the statutory language. However, it then reads the words of the statute without regard for their context in the statutory scheme, thus fundamentally misapplying the plain meaning rule. *See* R. Dickerson, *The Interpretation and Application of Statutes* 229–232 (1975). Properly applied, the plain meaning rule effects the Legislature's intent, because it compels a reading of the statute that is the opposite of that announced by the Court. Reading the statute woodenly, on the other hand, subverts the plainly expressed intent of the Legislature.[6]

---

4. Our reading of sections 94–B and 110(2) is consistent with our statement in *Stickles v. United Parcel Service,* 554 A.2d 1176, 1181 n. 3 (Me.1989), that "[a]n important purpose of the early pay system is to avoid lawyer involvement at this stage [prior to the informal conference]."

5. We are no longer permitted to liberally construe the statute in favor of the injured employee. The Act now provides as follows:

In interpreting this Act, the commission shall construe it so as to ensure the efficient delivery of compensation to injured workers at a reasonable cost to employers. All workers' compensation cases shall be decided on their merits and the rule of liberal construction shall not apply to those cases. Accordingly, this Act is not to be given a construction in favor of the employee, nor are the rights and

interests of the employer to be favored over those of the employee. 39 M.R.S.A. § 94–A(3) (1989).

6. Moreover, as we recently noted in construing the enhancement provisions of Maine's criminal sentencing statute,

[t]he first task of a court when interpreting a statute is to ascertain the real purpose of the legislation.... Once this purpose is found, a court should give effect to it, avoiding results that are absurd, inconsistent, unreasonable or illogical, if the language of the statute is fairly susceptible to such a construction.... A court can even ignore the literal meaning of phrases if that meaning thwarts the clear legislative objective.

*State v. Niles,* 585 A.2d 181, 182 (Me.1990) (citations omitted).

Section 110(2) provides that the employer pay the reasonable attorney fees of a prevailing employee, except that "[t]he employer may not be assessed costs of an attorney's fee attributable to services rendered prior to one week after the informal conference under section 94–B ... unless a party adverse to the employee was so represented at that stage." 39 M.R.S.A. § 110(2) (1989). An "informal conference under section 94–B," in turn, is an informal conference that is held *no later than three weeks* from the date of filing of the Notice of Controversy as required by section 94–B: "Upon filing of a notice of controversy, ... the matter shall be referred to a commissioner, who *shall schedule* an informal conference *to be held no later than 3 weeks from the date of that filing.*" 39 M.R.S.A. § 94–B (1989) (emphasis added). An informal conference held at a time not allowed by the statute has no claim to be an "informal conference under section 94–B."[7]

The Court criticizes this reading of the statute by suggesting that, if a conference delayed beyond the statutory period is not an "informal conference" pursuant to the statute, the Commission's failure to schedule an informal conference within the statutory time frame "would leave employees completely without remedy in the future." This is so, the Court suggests, because an informal conference is a "necessary prerequisite to a hearing on a petition for compensation." The Court does not explain why it thinks the Legislature would have intended

such a perverse result. In view of the Legislature's expressed concern lest the informal conference process become a cause of delay, it seems more likely to me that the Commission's failure to schedule an informal conference within the required period should free the employee to file a formal petition. *See* 39 M.R.S.A. §§ 94, 94–B.

Perhaps the Court's most grievous omission is its failure to give effect to the Legislature's undisputed intent to make the early-pay system a unified and harmonious whole, of which the informal conference process is but a small part. "Every statute must be construed in connection with the whole system of which it forms a part and all legislation on the same subject matter must be viewed in its overall entirety in order to reach an harmonious result which we presume the Legislature intended." *Finks v. Maine State Highway Commission*, 328 A.2d 791, 795 (Me. 1974). *See also Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 480.(Me.1982) (statute must be read as a whole, "so that all of its provisions are read in harmony and are effectuated").

The Court now undermines the careful work of the Legislature in crafting the early-pay system as a balanced whole, and subverts the legislative purpose of promoting the speedy, efficient and inexpensive resolution of claims.[8] Because the Legislature clearly intended that the early-pay system foster quick disposition of claims,[9] de-

---

7. The Court's reliance on dicta in *Ayotte v. United Services, Inc.,* 567 A.2d 430, 434, 436 (Me. 1989) is misplaced. Contrary to the Court's assertion today, we did not decide in *Ayotte* the length of what we referred to in that case as the "informal conference period," *id.* at 434, because the question was not before us.

8. Expediting the informal conference process renders this part of the early-pay system consistent with the overall purposes of the Workers' Compensation Act. The Act must be construed "so as to ensure the efficient delivery of compensation to injured workers at a reasonable cost to employers." 39 M.R.S.A. § 94–A(3). The Commission's procedures must "assure a speedy, efficient and inexpensive disposition of all proceedings." 39 M.R.S.A. § 92.

Because workers' compensation is an exclusive remedy, *see, e.g., Fanion v. McNeal,* 577

A.2d 2, 4 (Me.1990), it is particularly important that it be a speedy one.

9. The legislative history contains numerous references to the legislative intent that the informal conference be held within a strict time frame. For example, the report of the select committee proposing the early-pay system was explicit:

The [informal conference] process described above will only work and should only be implemented if the Commission is adequately staffed and organized ... [C]onsiderable concern remains over the ability of the Commission to hold hearings and issue decisions in a prompt and timely manner. This ability *must* be assured in order for an "early pay" system to work ... Not only must the staff capability be available but *administrative control must*

lay in the informal conference process makes the informal conference a barrier, rather than an aid, to the accomplishment of these goals.

A minor, yet telling, result of the Court's action is to render the mandatory scheduling provision ineffectual. There is no longer any provision in the Act that enforces the mandatory three-week informal conference deadline. Because the Commission, in defiance of the Legislature's command, now can delay indefinitely the point at which attorney fees begin to accrue, the mandatory scheduling provision has no consequences whatever. It has become meaningless. The Court should not be so quick to presume that the Legislature intended an empty command.

The legislative history of the early-pay amendments is illuminating. This legislation was hotly debated in the 111th Legislature. The informal conference provision was especially troublesome. Legislative opponents of the informal conference procedure were clearly troubled by the possibility that the informal conference process might become a burden on employees seeking speedy determination of their claims. As Representative Gauvreau pointed out,

> [t]he basic problem with the bill lies in the area of the informal conference, and ironically, although the bill purports to expedite resolution on an uncontested matter in workers' compensation cases, the real potential, the grave potential is here for further delay and for formal proceedings to begin even later than they begin at the present time.

1983 Legislative Record at 841. Proponents assured the critics that no such further delays could result. *Id.*

Those misgivings have now been realized. Due to administrative overload, the informal conference is frequently delayed well beyond the three-week period within which it is required to be held. Here, it was two months late. Such delays impose a burden on the injured employee in a way clearly at odds with the intent of the Legislature. Given its uneasiness about imposing an additional burden on injured employees in the informal conference process, the Legislature manifestly did not intend to deprive them of compensation for their legal representation beyond the statutory one-week period following the three-week deadline for holding the informal conference.

The Court suggests its ruling today is consistent with the Legislature's purpose of discouraging excessive attorney involvement in the informal conference process, in order to foster quick and inexpensive resolution of claims. But where, as here, the controversy is only finally resolved by formal proceedings, the exclusion of "unnecessary attorney intrusion" is obviously inapplicable. Moreover, although "[a]n important purpose of the early pay system is to avoid lawyer involvement at this stage," *Stickles v. United Parcel Service*, 554 A.2d 1176, 1181 n. 3 (Me.1989), and the Legislature undoubtedly intended to minimize lawyer involvement at the informal conference stage as a cost-saving measure,[10] the Court today essentially forces the employee to hire a lawyer if he wishes any action on his claim within a reasonable length of time.

---

*also be present to assure that these goals are met.*
Report of the Speaker's Select Committee on Workers' Compensation (January 17, 1983) at 15 (second emphasis added). To that end, the introduction of the early-pay system was accompanied by an increase in the Commission's staffing. Statement of Fact, L.D. 1322 (111th Leg. 1983).

**10.** The Statement of Fact attached to the bill introducing the early-pay system stated:

The particular form of early-pay instituted here incorporates a number of safeguards for injured workers, while seeking to address several cost issues, including delays which inhi-

bit rehabilitation and return to work, *excessive* attorney involvement and litigation. An informal conference procedure, where *unnecessary attorney intrusion would be discouraged,* is included.
Statement of Fact, L.D. 1322 (111th Leg.1983) (emphasis added). At the same time, the legislative debates reflected concern that the attorney fee provisions of § 94–B would work an injustice by undermining the employee's position at a critical stage of the process. *See, e.g.,* 1983 Legislative Record at 791 (remarks of Rep. Hayden); *id.* at 840 (remarks of Rep. Hobbins); *id.* at 84–841 (remarks of Rep. Beaulieu).

Requiring the employee to seek mandamus to compel the Commission to observe its statutory deadline imposes an extra burden on the employee just at the point when he is least able to bear it. Moreover, making mandamus the employee's remedy for the Commission's tardiness flies in the face of the legislative goal of reducing attorney involvement.

The Court also suggests that requiring the employer to bear the cost of "unforeseen administrative delay" is somehow inconsistent with our duty to construe the Workers' Compensation Act in neutral fashion, because 39 M.R.S.A. § 94–A(3) states that the Act "is not to be given a construction in favor of the employee, nor are the rights and interests of the employer to be favored over those of the employee." Characterizing this reading of the Act as an impermissible "liberal construction" distorts the issue. The Legislature has already decided explicitly that the burden of paying the reasonable attorney fees of a prevailing employee should fall on the employer and insurer after the statutory informal conference period. If administrative delays in holding the informal conference are indeed inevitable, the burden of the delay (in the form of increased attorney fees) must fall either on the employee, or on the employer and insurance carrier. The question is which allocation of the burden is consistent with the legislative scheme.

In *Gordon v. Maine Reduction Co., Inc.,* 358 A.2d 544 (Me.1976), we noted that

> the purposes of the Act are more likely to be satisfied if an employee's appeal costs are paid by the employer (and thus borne, probably, by the ultimate consumer of the economic product) instead of coming out of the compensation which is designed to sustain the employee until he regains the ability to earn for himself.

358 A.2d at 551. Our holding in *Gordon* did not depend on a "liberal construction" of the Act, and thus is unaffected by the subsequent amendment of section 94–A(3) that removed the rule of liberal construction from the Act. P.L.1985, ch. 372, § A, 34. Indeed, we noted in *Gordon* that re-

quiring the employer to pay an employee's attorney fees on appeal is not a penalty for delay, but a mechanism for carrying out the overall purposes of the Act. 358 A.2d at 550–551. The same considerations that we applied in *Gordon* apply here: the burden of attorney fees falls more heavily on the injured employee, who by virtue of the Notice of Controversy no longer is receiving compensation, 39 M.R.S.A. § 51–B(7), than upon the employer or insurer.

After today, there is no longer any incentive for employers or insurers to avoid delays during the early-pay process. Any delay in holding an informal conference postpones the beginning of their liability for the employee's attorney fees. Indeed, under the Court's interpretation the employers and insurance carriers may now be expected to lobby against increased staffing and funding for the Commission, to gain tactical advantage by placing on the employee the burden of any added costs due to delay. Moreover, because the employer or insurer can suspend compensation payments to the employee between the filing of the Notice of Controversy and the final resolution of the dispute, administrative delays in holding the informal conference impose a double burden on the employee.

The Court suggests that "the proper remedy, if one is needed, is legislative." Before today, no remedy was needed because the Legislature had spoken plainly in establishing one.