Richard STICKLES

v.

UNITED PARCEL SERVICE, et al.

George FALOON

v.

COMBUSTION ENGINEERING, et al.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1989.

Decided Feb. 27, 1989.

James McAdam, (orally) McTeague, Higbee, Libner, Reitman, MacAdam & Case, Brunswick, for Falcon.

Richard C. Nale, (orally), Nale & Nale, Waterville, for Stickles.

Eve H. Cimmet (orally), Richardson & Troubh, Portland, for UPS and Liberty Mut. Ins.

Mark V. Franco (orally), Hunt, Thompson & Bowie, Portland, for Combustion Engineering and CNA Ins.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, HORNBY and COLLINS, JJ.

HORNBY, Justice.

In these consolidated cases we examine the "Early Pay System" added to Maine's Workers' Compensation Act in 1983. 39 M.R.S.A. § 51–B (Pamph.1988). We conclude that, by failing to file a notice of controversy within 44 days from the time an employee tells an employer that lost work time is caused by a work-related injury, the employer accepts compensability of the injury at the level of the employee's claim until it persuades the Commission to reduce the award on a petition for review. We vacate the judgments of the Appellate Division and remand for further proceedings in light of this holding.

On January 22, 1985, Richard Stickles (Stickles), an employee of United Parcel Service (UPS), suffered a work-related injury to his back. He notified his supervisor of the injury immediately and returned to work. More than a month later, Stickles re-injured his back and informed UPS that he was going to miss work time due to the January 22 injury. He returned to work in early April of that year. No workers' compensation benefits were paid to Stickles for his absence and no notice of controversy was filed by UPS during that time. In March of 1986, the injury again prevented Stickles from working. In June of 1986, he informed UPS that he intended to file a petition for compensation. UPS then filed its notice of controversy.

George Faloon (Faloon), an employee of Combustion Engineering (Combustion), injured his back at work on January 8, 1985. He immediately reported the injury to Combustion and returned to work. On April 11, 1985, Faloon informed his supervisor that under doctor's orders he could not return to work because of the January 8, 1985, injury. Faloon returned to work in a supervisory capacity for several days in May of 1985 but has not worked since that time. Combustion did not file a notice of controversy until Faloon gave notice of his intent to file a petition in June of 1985.

In both cases, the Commission ruled that by failing to file a notice of controversy within 44 days from the time the employees asserted to their respective employers that their lost work time was due to a work-related injury, the employers accepted compensability of the injuries. Furthermore, the Commission ordered payment of benefits for total incapacity—in Faloon's case because that was the nature of the claim, and in Stickles' case because "the law ... requires such a finding unless the employer controverts within the 44 days allowed." In both cases, the Commission reasoned that regardless of the actual level of inca-

pacity of the respective employees, only a successful petition for review could entitle the employers to reduce the level of benefits. The Appellate Division affirmed.

## OPERATION OF SECTION 51–B

Section 51–B of Title 39 is the major component of Maine's "Early Pay System," a 1983 amendment designed to reduce delay, lawyer involvement and litigation in compensating and rehabilitating injured workers. L.D. 1322, Statement of Fact (111th Legis.1983); Speakers' Select Committee on Workers' Compensation 5–8 (Jan. 17, 1983); Legis.Rec. 790–93 (1983). Because these employees did not lose any work time immediately upon the occurrence of their injuries, subsection 3 of that section applies. It provides:

> In cases where the employee did not lose time from work within 5 scheduled work days following the injury, compensation for incapacity under section 54–B [total incapacity] or 55–B [partial incapacity] is due and payable within 14 days of the date the employee asserts to the employer that the lost time is related to the injury.

39 M.R.S.A. § 51–B(3) (Pamph.1988). The statutory language could not be clearer: UPS and Combustion were obligated to pay compensation at some level to Stickles and Faloon within 14 days after the employees notified them that lost time was related to their injuries. In fact, neither UPS nor Combustion did so.

If UPS and Combustion believed compensation was not payable, they had a clear statutory remedy:

> If the employer, prior to making payments under subsection 3, controverts the claim to compensation, he shall file with the commission, within 14 days after an event which gives rise to an obligation to make payments under subsection 3, a notice of controversy....

39 M.R.S.A. § 51–B(7) (Pamph.1988). Employers who fail to use that remedy remain under the clear obligation to start payments at some level:

> If at the end of the 14–day period in subsection 3 ... the employer has not

filed the notice required by this subsection, he shall begin payments as required under [that] subsectio[n].

*Id.* Here, since UPS and Combustion failed to file a notice of controversy, they were required to begin payments at some level within 14 days of their employees' notice that lost time was caused by a work-related injury. This they admittedly failed to do.

An employer who does begin payments within the 14 days gets a second chance to resist compensation:

> In the case of compensation for incapacity under subsection 3, he may cease payments and file with the commission a notice of controversy, only as provided in this subsection, no later than 44 days after an event which gives rise to an obligation to make payments under subsection 3.

*Id.* Thus, although payments at some level must begin within the 14 days, the employer may discontinue them by filing a notice of controversy. Failure to file the notice within this extra 30 days carries sterner consequences:

> Failure to file the required notice of controversy prior to the expiration of the 44–day period, in the case of compensation under subsection 3, *constitutes acceptance by the employer of the compensability of the injury or death.*

*Id.* (emphasis supplied). UPS and Combustion neither began any payments within the 14 days, nor filed any notice of controversy within the 44 days. They contend that by virtue of the emphasized language in the statute, the only consequence of their default is that they can no longer question whether the incidents in question were work-related, but that they can still challenge the level of compensation retroactively due their employees. Stickles and Faloon, on the other hand, argue that their employers must pay them benefits for total incapacity until the employers bring a successful petition for review.

## LEVEL OF INCAPACITY

█ The only difficult issue in interpreting this statute is determining what it is

that an employer must begin paying within the first 14 days—for whatever it is, the employer is committed to that amount until it obtains Commission review:

> If, at the end of the 44–day period the employer has not filed a notice of controversy, ... the payments may not be decreased or suspended, except as provided in section 100 [concerning petitions for review].

39 M.R.S.A. § 51–B(7) (Pamph.1988). There are three choices: benefits at the level of incapacity that the employee actually suffered; benefits for total incapacity in all cases; or benefits at the level of incapacity that the employee claimed when he or she attributed lost work time to a work-related injury. The Commission' and the Appellate Division concluded in both cases that benefits for *total* incapacity were due regardless of the employees' actual degree of incapacity. In Stickles' case, the Commission reached that conclusion as a matter of law because of UPS's failure to file a notice of controversy. In Faloon's case, it reasoned that Combustion's liability was determined by Faloon's claim, a claim that it found was for total incapacity benefits. UPS and Combustion, on the other hand, argue that because section 51–B(3) requires compensation for either total or partial incapacity (sections 54–B and 55–B respectively), the level of incapacity is always an open question and the Commission must base any award, not on what the employees claimed nor on any presumption of total incapacity, but on what Stickles' and Faloon's degree of incapacity actually was as of the time of work loss. We conclude that the Commission and the Appellate Division employed the correct approach in Faloon's case by determining the nature of the original claim, and erred in Stickles' case by determining that, as a matter of law, a claim is for total incapacity.

First, we reject UPS's and Combustion's argument that the statute limits the effect of their defaults solely to the concession that the incidents were work-related and that they are free now, despite their failure either to pay benefits or to file a notice of controversy, to litigate the issue of past incapacity. Such a narrow reading of the language ("constitutes acceptance by the employer of the compensability of the injury or death") makes no sense within the overall structure of the early pay provisions, which are designed to encourage early and prompt payment of benefits. Accepting the employers' argument would permit employers to delay all payments for a work-related injury and to contest the level of benefits retroactively no matter how late they filed a notice of controversy. This outcome would increase employers' incentive to delay payment in work-related injuries, a result directly contrary to the statute's objectives.

Second, we see no basis in the statute for the Commission's ruling in *Stickles* that every employee notice of lost time due to a work-related injury is conclusively presumed to be a claim for total incapacity. Instead, the statute specifically contemplates that under the early pay system, benefits may be due at a level of either partial or total incapacity. 39 M.R.S.A. § 51–B(3) (Pamph.1988).

Third, we conclude that the overall structure of section 51–B contemplates an employee claim and that this claim should determine the level of incapacity when no payments have been made and no notice of controversy filed. It is true that the statute does not contemplate formal claims at this early stage; nowhere is there reference to a claim procedure. Instead, once an employee reports to an employer that lost work time is attributable to a work-related injury, the employer is obligated to report that injury to the Commission within seven days. 39 M.R.S.A. § 106(1) (Pamph. 1988). The Commission is then directed to contact the employee immediately and inform the employee of his or her rights. 39 M.R.S.A. § 94–A(1) (Pamph.1988). Thereafter the Commission is supposed to "monitor cases" to insure that "[e]ither payments are initiated or notice of controversy is filed within the time limits established in section 51–B, subsections 3, 4 and 7" and that the claimant receives "the full amount of compensation to which he is entitled."

39 M.R.S.A. § 94–A(2)(A) & (B) (Pamph. 1988).

But it is apparent that the statute contemplates a claim of some sort. In its very first subsection concerning the effective date, section 51–B refers to "all claims arising out of injuries." In its second subsection requiring prompt and direct payment to employees, it excepts instances "where the claim to compensation is controverted...." Subsection 4 dealing with compensation for medical expenses refers to a "request ... made for payment." Subsection 7, dealing with the notice of controversy, provides that an employer shall file such a notice before making early payments if the employer "controverts the claim to compensation ..." Subsections 8, 9 and 10 likewise refer to a "claim" for compensation.

Although subsection 3 requires payment for either total or partial incapacity not within 14 days of a claim, but within 14 days of "the date the employee asserts to the employer that ... lost time is related to the injury" (within 14 days of employer "notice or knowledge of the injury or death" in the case of immediately lost work time), it is difficult to read this language as not contemplating some sort of claim or request by an employee. It would be impossible for an employer to know how much to pay within the first 14 days without some indication of an employee's demand. And clearly there must be something to controvert before an employer can know what to file in its notice of controversy. The knowledge that lost time is work-related is only one element in deciding what benefits, if any, to pay; in addition, the employer will want to know what level of incapacity the employee claims.

Thus, it is the employee's claim that we conclude is retroactively binding upon the employer who fails to comply with the statute's command to pay benefits or file a notice of controversy. Since the employee is obligated only to notify the employer of lost time, we recognize that the "claim" will sometimes be only implicit and will require reconstruction by the Commission.[1] But this is the only interpretation of the statute that is consistent with its objective of encouraging early payment of benefits with a minimum of lawyer involvement and litigation. The Legislature must simply have believed that the nature of an employee's claim would be sufficiently obvious in most cases that no further specificity was necessary.

■ UPS and Combustion argue that this construction of the statute will generate unjustified windfalls to employees who are not totally incapacitated or at least not incapacitated to the degree they claim. It is true that under our holding, an employer's failure to file a notice of controversy compels it to pay retroactively whatever its employee's claim was; that is the penalty the statute levies for the employer's failure to comply with its notice requirements. The statute also provides adequate safeguards against future overpayments, however. Specifically, nothing in the statute prevents an employer from filing a petition for review under 39 M.R.S.A. § 100 (Pamph.1988) as soon as it becomes aware that an employee has petitioned the Commission to award such benefits. The Commission could then hear both petitions on a consolidated basis (unless that would unduly delay hearings on the employee's petition). The result, of course, would be that the employer would be ordered to pay retroactively at the level of the claim until the date of the Commission's decision, but thereafter only at the level of incapacity decreed by the Commission on the petition for review.

## PROCEEDINGS ON REMAND

We granted review of these two cases to resolve the uncertainty over the full effect

---

1. The Commission has in fact done this in a number of cases. *See, e.g., Ashlock v. Tabenken Corp.,* No. 88–171 (Me. Workers' Comp. Comm'n App.Div. Sept. 20, 1988); *Blackerby v. G2S Constructors, Inc.,* No. 88–168 (Me. Workers' Comp. Comm'n App.Div. Sept. 9, 1988); *Bernard v.* *Thompson Trucking,* No. 88–57 (Me. Workers' Comp. Comm'n App.Div. April 15, 1988); *French v. United Engineers and Constructors, Inc.,* No. 87–147 (Me. Workers' Comp. Comm'n App.Div. Dec. 16, 1987).

of an employer's failure to file a notice of controversy. We have confirmed today the Commission's approach in awarding benefits retroactively at the level of the original claim. In Faloon's case, substantial evidence supports the Commission's determination that his original claim was implicitly one for total incapacity benefits.[2] The Commission did not engage in a similar exercise with respect to Stickles. It is necessary, therefore, for the Commission to determine on remand what level of incapacity Stickles originally claimed.[3]

Hereafter, employers who fail to file a timely notice of controversy will be aware that their remedy to avoid ongoing overpayments (if they believe the claimed incapacity is excessive) is to file a petition for review as soon as they learn of an employee's petition. Because of the previous uncertainty, however, we believe the Commission should consider whether, in these two cases, it wishes to exercise its power under section 51–B(9) (to "take any action it considers necessary to protect the rights of all parties...") to decide immediately the nature of Stickles' and Faloon's incapacity for purposes of future benefits, rather than compel these two employers to start again at the beginning by petitioning for review and awaiting the scheduling of a hearing and decision in the ordinary course, and

paying possibly excessive benefits in the interim. We therefore remand both cases.

The entry is:

Judgments vacated and remanded to the Appellate Division to remand to the Commission for further proceedings.

All concurring.

---

**2.** We agree with the Commission and the Appellate Division that Faloon's return to work (without any indication that he was withdrawing a claim for compensation) does not excuse Combustion's failure to file a notice of controversy.

**3.** UPS argues that because Stickles turned down an offer of workers' compensation benefits, there was no claim and nothing for it to controvert by filing a notice of controversy. The structure of the early pay system cuts conclusively against this argument. It is specifically the notice of lost time that initiates the employer's obligation to notify the Commission, 39 M.R.S.A. § 106(1) (Pamph.1988), the Commission's obligation to notify the employee of his or her rights, *id.* at § 94–A(1), and the employer's obligation to pay benefits or file a notice of controversy, *id.* at § 51–B(3), (7). An important purpose of the early pay system is to avoid lawyer involvement at this stage. *See* L.D. 1322, Statement of Fact (111th Legis.1983). When a notice of controversy is filed, the Commission is directed to hold an informal hearing and provide advice and assistance to the employee through the Office of Employee Assistants. 39

M.R.S.A. § 94–B (Pamph.1988). By requiring a notice of controversy and a conference with the Commission, the statute provides an opportunity for the Commission to establish that the employee knows what it is that he or she may be giving up. Without such protection, when an employer like UPS offers with one hand workers' compensation benefits and with the other hand higher wage replacement benefits, it is not surprising that an employee like Stickles takes the latter, unaware of the long term consequences (UPS can unilaterally discontinue the wage compensation benefits at any time). Section 67 of the statute supports this reading. It provides: "No agreement by an employee unless approved by the commission or by the Commissioner of Labor, to waive his rights to compensation under this Act may be valid." 39 M.R.S.A. § 67 (Pamph.1988). Accordingly, Stickles' notice of lost time due to a work-related injury was sufficient to constitute a claim within the meaning of section 51–B even though he agreed to forego workers' compensation benefits.