**Joel W. PALMER, Sr.**

v.

**BATH IRON WORKS CORP. and Liberty Mutual Insurance Co.**

Supreme Judicial Court of Maine.

Argued May 4, 1989.

Decided May 26, 1989.

Michael J. Daly (orally), Shapiro & Daly, Gardiner, for plaintiff.

Gregory R. Smith (orally), William O. Lacasse, Norman, Hanson & Detroy, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

■ Sustaining Joel Palmer's workers' compensation appeal, we hold that the Early–Pay System, 39 M.R.S.A. § 51–B (Pamph.1988), imposes a duty on any employer that does not accept a claim for permanent impairment to file a timely notice of controversy, even if the employee's notice of claim does not specify the precise percentage of impairment claimed. Palmer injured his back in 1984 in the course of his

employment as a brick mason at the Bath Iron Works (BIW) shipyard. On April 2, 1986, BIW's insurer, Liberty Mutual Insurance Co., received a letter from Palmer's attorney giving notice of claim for permanent impairment to his back, accompanied by a medical report stating that his back "probably has medically improved to the maximum extent possible." In his discussion of Palmer's condition, the physician assessed the extent of impairment by three different methods, arriving at results ranging from 25% to "approximately 30% to 35%" depending on the method used. Almost four months later, on July 30, Palmer filed his permanent impairment petition with the Workers' Compensation Commission. Five days later, BIW for the first time gave notice of controversy, alleging "lack of notice" as one of its grounds for controverting Palmer's claim.

The Commission, ruling that Palmer had given sufficient notice of claim to trigger the default provision of the Early–Pay System statute,[1] awarded benefits for 25% permanent impairment. On November 15, 1988, the Appellate Division vacated the award on the basis of its construction of the Commission's Rule 13.1 requiring that a notice of claim for permanent impairment include a "medical report describing the extent of permanent impairment." The Appellate Division held that Palmer's notice of claim, given by his attorney's letter and accompanying the medical report, was insufficient to trigger a duty on BIW's part to respond because the notice "did not state a precise amount of permanent impairment suffered by the employee." The Appellate Division remanded the case to the hearing commissioner for consideration of BIW's contest of Palmer's claim.[2]

On February 24, 1989, we decided *Stickles v. United Parcel Service*, 554 A.2d 1176 (Me.1989), and we granted review in this case immediately thereafter. In *Stickles* we held that the employer has a statutory duty to respond to a notice of claim for incapacity even if the extent of incapacity claimed is "only implicit and will require reconstruction by the Commission." *Id.* at 1180. We conclude that the differences between claims for incapacity and claims for permanent impairment do not alter this statutory obligation that the legislature has imposed equally in both situations. The manner in which the legislature has recognized the special urgency of unpaid claims for incapacity is by imposing different time limits: on a claim for incapacity, the employer must commence payment within 14 days and must decide whether to controvert the claim within 44 days after knowledge or notice of the injury; on a claim for permanent impairment, the employer has 90 days to pay or to controvert the claim. *See* 39 M.R.S.A. § 51–B(3), (4), (7).

On either type of claim, however, an employer who does not controvert the claim within the allotted time is deemed to have accepted it. *See id.* § 51–B(7). The two

---

1. The statute reads in pertinent part:

   **4. Compensation for impairment; compensation for medical expenses.** Compensation for impairment under section 56–B shall not be payable prior to the date on which the injured employee reaches the stage of maximum medical improvement. It shall become due and payable within 90 days after the employer has notice that maximum medical improvement has been attained....

   ....

   **7. Notice of controversy.** ... If the employer, prior to making payments under subsection 4, controverts the claim to compensation, he shall file with the commission, within 90 days after an event which gives rise to an obligation to make payments under subsection 4, a notice of controversy in a form prescribed by the commission....

   ... Failure to file the required notice of controversy prior to the expiration of the 90–day period under subsection 4 constitutes acceptance by the employer of the extent of impairment claimed....

   39 M.R.S.A. § 51–B(4), (7) (Pamph.1988).

2. At stake in this appeal is the employee's statutory right to prompt resolution of uncontested workers' compensation claims, a right that would be lost by remanding for relitigation as a contested claim. Furthermore, the issue of statutory interpretation has been fully briefed and argued by the parties, and by reinstating the final decision of the hearing commissioner we bring this litigation to a close. The case therefore falls within a well-established exception to the final judgment rule. *See State v. Maine State Employees Ass'n*, 482 A.2d 461, 464–65 (Me.1984).

notice of controversy provisions in subsection 7 are similarly phrased:

> Failure to file the required notice of controversy prior to the expiration of the 44–day period, in the case of compensation under subsection 3, constitutes acceptance by the employer of the compensability of the injury or death.... Failure to file the required notice of controversy prior to the expiration of the 90–day period under subsection 4 constitutes acceptance by the employer of the extent of impairment claimed or the reasonableness of the medical services claimed.

*Id.* The reference to the "extent" of impairment claimed, though absent from the parallel clause dealing with incapacity, merely makes explicit for claims for permanent impairment what we held in *Stickles* to be implicit for claims for incapacity. *See Stickles v. United Parcel Serv.*, 554 A.2d at 1179–80.

We find no merit in BIW's contention that it had insufficient notice of the extent of impairment claimed. The letter from Palmer's attorney stated clearly and concisely that "[t]his letter constitutes notice of his claim for award of permanent impairment." The attached medical report complied with the statutory requirement of "notice that maximum medical improvement has been attained" under 39 M.R.S.A. § 51–B(4). BIW was thereby fully alerted that its "[f]ailure to file the required notice of controversy ... [would] constitute[ ] acceptance by the employer of the extent of impairment claimed." *Id.* § 51–B(7).

It is true that the medical report left open two important questions: It gave a range of impairment (25%–35%) rather than stating a single, precise percentage of impairment claimed. It also referred to Palmer's impairment as being in part due to "arthritis" without any clear statement that the arthritis was a consequence of the work-related injury on which Palmer's claim was based. We agree that an employer could reasonably demand answers to those questions before accepting a claim. But if the employer does not wish to rely on the Commission to answer those questions definitively from the information at hand, it has a simple alternative—it can file a notice of controversy. *See Stickles v. United Parcel Serv.*, 554 A.2d at 1178. Indeed, it is hard to see in this case how BIW was harmed by Palmer's failure to specify a single, precise percentage of impairment since the Commission chose to award benefits for 25% impairment, the bottom of the range estimated by Palmer's physician.

■ We cannot accept the Appellate Division's conclusion that the medical report attached to the notice of claim failed to "describ[e] the extent of permanent impairment" as required by Commission Rule 13.-1. The fatal ambiguity perceived by the Appellate Division resulted not from any failure to describe, but from the very thoroughness of the description. Although we owe special respect to an agency's interpretation of its own regulations, *see Kuvaja v. Bethel Savings Bank*, 495 A.2d 804, 806 (Me.1985), a regulation may not be interpreted in a manner that would make it inconsistent with the governing statute. *See Theriault v. Brennan*, 488 F.Supp. 286 (D.Me.1980), *aff'd*, 641 F.2d 28 (1st Cir. 1981).

The remedial purposes of the Workers' Compensation Act should not be frustrated by rigid technical standards for notices in the nature of pleadings. *See Canning v. State*, 444 A.2d 387, 390 (Me.1982); *Clark v. DeCoster Egg Farms*, 421 A.2d 939, 942–43 (Me.1980). The Appellate Division's construction of Rule 13.1, exempting the employer from any duty to respond to a notice of claim that "does not state the specific degree of permanent impairment sustained by the employee," is in direct conflict with the statute the rule was meant to implement. The statutory purpose behind the Early–Pay System, 39 M.R.S.A. § 51–B, is to reduce delay and litigation over disputed claims. *See Stickles v. United Parcel Serv.*, 554 A.2d at 1178. That purpose would be seriously disserved by a holding that the notice of claim given BIW by Palmer failed to describe adequately his claim of permanent impairment.

The entry is:

Judgment of the Appellate Division vacated. Case remanded to the Appellate Division with instructions to affirm the Commission's decision.

It is further ordered that the employer pay to the employee $750 for counsel fees plus reasonable out-of-pocket expenses for this appeal.

All concurring.