Bertha WENTWORTH

v.

MANPOWER TEMPORARY SERVICES, et al.

Supreme Judicial Court of Maine.

Argued March 5, 1991.

Decided April 18, 1991.

Schuyler Steele (orally), Portland, for employee.

Robert E. Noonan and Eve H. Cimmet (orally), Richardson & Troubh, Portland, for employer.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, COLLINS and BRODY, JJ.

McKUSICK, Chief Justice.

■ On January 18, 1985, Bertha Wentworth gave her employer, Manpower Temporary Services,[1] notice of an injury to her hands and arms. Manpower failed to file a timely notice of controversy and failed to make payments as required by the early-pay system in the Workers' Compensation Act. *See* 39 M.R.S.A. § 51–B (1989 & Supp.1990). In April 1987, after a hearing on Wentworth's petition for award of compensation, the commission ordered Manpower to make the retroactive payments it owed to Wentworth for her periods of total and partial incapacity since January 1985 and to continue to make total incapacity payments. Nearly 14 months later, Manpower filed a petition for review pursuant to 39 M.R.S.A. § 100 (1989), thus starting the proceeding now here on Manpower's appeal. The appeal presents the question whether at this late date Manpower may contest that Wentworth's January 1985 injury was work-related. Finding that the plain language of the Act does not allow an employer that has failed to file a timely notice of controversy to challenge the work-related nature of the employee's injury on a petition for review, we affirm the decision of the Appellate Division that upheld the commission's decision to that effect.

In November 1983, after a period of temporary employment as a blueberry packer, Bertha Wentworth began to notice pain in her arm. A physician prescribed medication and she returned to the work force in January 1984 as a temporary employee. Through much of 1984 she worked at a series of jobs for Manpower Temporary Services and for other temporary agencies. In January 1985, during a two-week assignment from Manpower doing janitorial work, Wentworth felt more pain in her hands and arms. Wentworth stopped work for a time and, at her physician's suggestion, saw a specialist who diagnosed bilateral carpal tunnel syndrome.

Wentworth notified her employer of the injury on January 18, 1985, and Manpower the following May filed a first report of injury with the commission. It, however, failed at any time to file a notice of controversy and failed to begin making payments for incapacity. On August 15, 1986, Wentworth filed a petition for award of compensation, alleging that her janitorial assignment from Manpower in January 1985 had worsened the preexisting condition of her hands and arms. In its answer Manpower denied that Wentworth's injury was work-related. On September 8, 1986, Wentworth stopped work permanently. By its decree

of April 2, 1987, on Wentworth's petition, the commission purported to do nothing more than to require Manpower to comply with the early-pay system by making payments for incapacity.

Manpower did not appeal that decision and commenced benefit payments to Wentworth. It took no action to controvert her claim until May 27, 1988, when it filed a petition for review of Wentworth's incapacity. Before the commission, Manpower attempted to argue that Wentworth's January 1985 injury was not work-related. In its December 29, 1988, decree on Manpower's petition for review, the commission determined that by failing to file a timely notice of controversy, Manpower had effectively stipulated to the fact of Wentworth's January 1985 injury, to the fact that it arose out of and occurred in the course of employment, and to the fact of total incapacity until changed on a petition for review. Consequently, the commission refused to reexamine in an evidentiary hearing the cause of Wentworth's January 1985 injury. It did, however, accept Manpower's proof that the effects of that injury had diminished. Finding that Wentworth had regained some physical ability, the commission reduced her benefits to reflect a 65% partial incapacity. On Manpower's appeal, the Appellate Division by a divided decision affirmed the commission's decree, holding that an employer that disregards the 44-day deadline for filing a notice of controversy cannot argue on a petition for review that the employee's injury was not work-related, absent some showing of employee fraud.

We agree that the language of the statute establishing the early-pay system supports that result, and we are bound by the statute's plain meaning. *See Concord Gen. Mut. Ins. Co. v. Patrons–Oxford Mut. Ins. Co.*, 411 A.2d 1017, 1020 (Me. 1980). By the terms of 39 M.R.S.A.

§ 51–B(3),[2] which governs compensation for incapacity under the early-pay system, Manpower was obligated to begin making payments to Wentworth after it was informed of her January 1985 injury:

> The first payment of compensation for incapacity ... is due and payable within 14 days after the employer has notice or knowledge of the injury or death. In cases where the employee did not lose time from work within 5 scheduled work days following the injury, compensation for incapacity ... is due and payable within 14 days of the date the employee asserts to the employer that that lost time is related to the injury. Subsequent incapacity compensation benefit payments shall be made weekly and in a timely fashion.

Manpower could have challenged its obligation to compensate Wentworth for her claimed incapacity by filing a notice of controversy before two different limitation periods had run. *See* 39 M.R.S.A. § 51–B(7). First, Manpower could have avoided its obligation to begin payments only if it filed a notice of controversy within 14 days of receiving notice of Wentworth's January 1985 injury:

> If the employer, prior to making payments under subsection 3, controverts the claim to compensation the employer shall file with the commission, within 14 days after an event which gives rise to an obligation to make payments under subsection 3, a notice of controversy in a form prescribed by the commission.

39 M.R.S.A. § 51–B(7). Second, had Manpower begun to make the mandated payments, it could have suspended them by filing a notice of controversy within 44 days of its notice of the January 1985 injury:

> In the case of compensation for incapacity under subsection 3, the employer may cease payments and file with the commis-

---

**2.** As of the date of Wentworth's injury, the early-pay system computed the amount of payments for incapacity under either 39 M.R.S.A. § 54 (Pamph.1984) (compensation for total incapacity) or 39 M.R.S.A. § 55 (Pamph.1984) (compensation for partial incapacity). Sections 54 and 55 have since been repealed and replaced by 39

M.R.S.A. § 54–B (1989) and 39 M.R.S.A. § 55–B (Supp.1990). In all other relevant respects, payment for incapacity under the early-pay system is no different now than it was when Wentworth was injured. *Compare* 39 M.R.S.A. § 51–B (Supp.1990) *with* 39 M.R.S.A. § 51–B (Pamph.1984).

sion a notice of controversy, only as provided in this subsection, no later than 44 days after an event which gives rise to an obligation to make payments under subsection 3.

39 M.R.S.A. § 51–B(7). Here Manpower failed to file a notice of controversy before the 14–day period had run, failed to begin to make payments, and failed to file a notice of controversy before the 44–day period had run.

■ The early-pay system, by its terms, prescribes the effect of Manpower's failure to comply with the 14–day or 44–day limitation periods for filing a notice of controversy:

> If, at the end of the 14–day period in subsection 3 ... the employer has not filed the notice required by this subsection, the employer shall begin payments as required under th[at] subsection[ ].... Failure to file the required notice of controversy prior to the expiration of the 44–day period, in the case of compensation under subsection 3, constitutes acceptance by the employer of the compensability of the injury or death.

39 M.R.S.A. § 51–B(7). By charging the employer with "acceptance ... of the compensability of the injury," subsection 7 at the same time charges the employer with acceptance of what is a prerequisite to any award of compensation under the Act: that the injury was work-related. *See* 39 M.R.S.A. § 51 (1989) (an employee is entitled to "compensation" when the employee receives a personal injury "arising out of and in the course of ... employment"). The employer who lets the 44–day period lapse is in default under the early-pay system, the employee is given the benefit of having established as true the facts necessary to sustain the employee's entitlement to compensation as of the time of the claim, and the employer is bound by the determination of those facts necessarily implicit in the compensability of the injury under the Act. *Cf. Stickles v. United Parcel Serv.*, 554 A.2d 1176, 1178 (Me.1989) (employer who

fails to file a timely notice of controversy within the 44–day period is required to compensate the employee for whatever degree of incapacity is asserted in the employee's claim that is uncontroverted by the employer); *Forbes v. Wells Beach Casino, Inc.*, 409 A.2d 646, 652 (Me.1979) (entry of default against a civil defendant establishes the facts necessary to sustain the plaintiff's action and the allegations in the complaint).

Furthermore, 39 M.R.S.A. § 51–B(7) limits the employer's ability to reduce payments imposed by the statute or by order of the commission:

> If, at the end of the 44–day period the employer has not filed a notice of controversy, or if, pursuant to a proceeding before the commission, the employer is required to make payments, the payments may not be decreased or suspended, except as provided in section 100.

Manpower's sole mechanism for reducing the payments required by the April 2, 1987, commission decree is provided by 39 M.R.S.A. § 100. Section 100 expressly limits the scope of petitions for review: "On the first petition for review brought by a party to an action, the commissioner shall determine the appropriate relief, if any, under this section by determining the employee's *present degree* of incapacity." 39 M.R.S.A. § 100(2)(A) [3] (emphasis added). We have interpreted this language to mean that an employer may reduce the employee's incapacity payments if the employer succeeds in demonstrating by a preponderance of the evidence that the injury for which the employee receives compensation no longer operates as the sole, combined, or aggravating cause of incapacity. *See Soucy v. Fraser Paper, Ltd.*, 267 A.2d 919, 921–22 (Me.1970). This standard does not allow the employer to demonstrate that the incapacity injury was caused by a nonwork-related condition: "[A] petition for further compensation or for review of compensation can be addressed only to a change of circumstances since the commission's prior

**3.** Since the date of Wentworth's injury, section 100 has been amended in aspects not relevant to this appeal. *See* P.L.1985, ch. 372, part A, §§ 35–38 (eff. Jan. 1, 1986); P.L.1987, ch. 559, part B, §§ 41–42 (eff. Nov. 20, 1987).

decree was entered; it assumes that the prior decree was correct as to matters passed upon." *Canning v. State*, 444 A.2d 387, 390 (Me.1982). *See also Dillingham v. Andover Wood Prods.*, 483 A.2d 1232, 1234 (Me.1984); *Leo v. American Hoist & Derrick Co.*, 438 A.2d 917, 925 (Me.1981) ("a review of incapacity is only a device for either an employee or employer to ask the Commissioner to determine whether the incapacity of the injured employee has changed [since the time it was determined by decree, agreement, or default]; it is not the vehicle for collaterally attacking other aspects of the decree or agreement").

Once Manpower let the 44–day limitation period run and the commission ordered prospective payments for total incapacity to begin, Wentworth's incapacity would continue to be fully compensable until Manpower on a petition for review was able to "demonstrate[ ] by a fair preponderance of the evidence that the effect of the accident has ended." *Soucy v. Fraser Paper, Ltd.*, 267 A.2d at 921. Here Manpower succeeded in proving on its petition for review that Wentworth's incapacity had diminished. It cannot, however, be given a second chance to argue the merits of Wentworth's initial claim. If an employer is to challenge the employee's injury as nonwork-related, it must do so within the 44 days prescribed by the early-pay system. Otherwise, the provisions of the Act that encourage the employee to forego the assistance of legal counsel, coupled with the passage of time, which in the instant case was very substantial, will prejudice the employee's ability to counter the employer's belated defense. *Cf. Marsella v. Bath Iron Works Corp.*, 585 A.2d 802, 803–04 & n. 4 (1991) (early-pay system tries to avoid lawyer involvement before the informal hearing on a notice of controversy). We recognize that some employers and insurers will be bound to make incapacity payments for injury that ideally would not have been found compensable had a hearing been triggered by a timely notice of controversy. This, however, will happen only when the employer has failed to comply with its obligations under the early-pay system to inform the employee and the commission within 44 days if it is going to controvert the employee's workers' compensation claim.

The entry is:

Decision of the Appellate Division affirmed.

It is further ordered that the employer pay to the employee $750 for attorney fees plus reasonable out-of-pocket expenses for this appeal.

All concurring.