Doris L. CROTEAU–ROBINSON

v.

MERRILL TRUST/FLEET BANK

and

Travelers Insurance Co.

Supreme Judicial Court of Maine.

Argued Sept. 22, 1995.
Decided Jan. 17, 1996.

Paul F. Macri (orally), Berman & Simmons, P.A., Lewiston, for Plaintiff.

Robert W. Bower, Jr. (orally), Paul M. Boots, Norman, Hanson & DeTroy, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Doris L. Croteau–Robinson appeals from a decision of the Workers' Compensation Commission denying her petition for award, after

concluding that her injury falls within the so-called "rideshare immunity" that exempts from workers' compensation coverage injuries connected with employer-provided transportation "to and from work." 39 M.R.S.A. § 51(2) (1989).[1] Because we conclude that Croteau–Robinson's injury was not barred by the so-called "rideshare immunity" provision of 39 M.R.S.A. § 51(2), we vacate the Commissioner's decision.

Croteau–Robinson was employed by the Merrill Trust Company, now Fleet Bank of Maine [Fleet], in Lewiston. Fleet provided its employees off-premises parking located between one and two miles from the office, and a shuttle-bus to transport employees between the parking area and the workplace. On June 21, 1988, while returning to the office during a lunch-break, Croteau–Robinson caught her shoe on the edge of the bottom step of the shuttle-bus and injured her back and neck. Croteau–Robinson remained out of work until September or October of 1988 as a result of her injury and Fleet filed a timely notice of controversy in July, 1988. Croteau–Robinson received three or four bi-weekly checks during her absence from work, but those checks were discontinued in August. The employer testified that the checks were paid under an unwritten, informal "wage continuation policy" intended to provide uninterrupted salary for injured employees until workers' compensation benefits are begun. Croteau–Robinson filed a petition for award which was denied in December 1991; she filed a motion for findings of fact with proposed findings, which was also denied. The Appellate Division failed to resolve Croteau–Robinson's appeal prior to going out of existence on January 1, 1994.[2] P.L.1991, ch. 885, § A–10(2). We granted Croteau–Robinson's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp. 1994–95).

According to the traditional "public streets" or "coming and going" rule, an employee could not recover for injuries occurring during a commute to and from work, unless the employer provided or controlled the transportation. *Boyce v. Potter*, 642 A.2d 1342, 1343–44 (Me.1994); 1 A. Larson, *The Law of Workmen's Compensation* §§ 17.11, 17.40 (1993). Section 51(2) created an exception to the rule of liability for employer-provided transportation to and from work:

> An employee injured while participating in a private, group or employer sponsored car pool, van pool, commuter bus service or other rideshare program, having as its sole purpose the mass transportation of employees *to and from work*, for the purposes of this Act, shall not be deemed to have received personal injury arising out of or in the course of his employment....

39 M.R.S.A. § 51(2) (1989) (emphasis added). The statement of fact attached to the amendment states that the purpose of the rideshare immunity is to

> encourage individuals, groups and private employers, *in the interest of energy conservation*, to organize, sponsor and participate in various rideshare programs by expressly stating that an employee injured while participating in various rideshare programs shall not be eligible for workers' compensation benefits unless the injured employee received compensation for his participation.

L.D. 812, Statement of Fact (110th Legis.1981) (emphasis added).

The Commissioner in this case concluded that "[t]he language of [subsection 51(2) ] is broad enough when given its ordinary and customary meaning to encompass the em-

---

1. Section 51(2) has been repealed and replaced by 39–A M.R.S.A. § 201(2), which contains virtually identical language. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, § A–7 (effective January 1, 1993).

2. After the dissolution of the Appellate Division, the newly-created Workers' Compensation Board voted not to review any of the roughly 196 unresolved appeals pending with the Division, and, consequently, Croteau–Robinson's appeal was dismissed. Croteau–Robinson argued on appeal that the Board's summary dismissal of appellate review was in contravention of its statutory authority and violated her constitutional right of due process and equal protection. 39–A M.R.S.A. § 320 (Supp.1994). Because we vacate the decision on non-constitutional grounds, we do not reach the constitutional issues raised by the employee. *See Mathieu v. Bath Iron Works*, 667 A.2d 862, 864–68 (Me.1995) (summary disposition of 196 unresolved appeals not unconstitutional).

ployer sponsored transportation program provided by Fleet." Croteau–Robinson contends, however, that transportation between the work-place and the Fleet parking lot was not transportation "to and from work" as provided in the Act and that, because the purpose of the immunity was to promote energy conservation, there is no legislative intent to extend the immunity to injuries occurring over short distances between a parking lot and the work-place. We agree.

■■■ The shuttle-bus service provided by Fleet was not a "rideshare program" for purposes of section 51(2). The term "rideshare" ordinarily refers to the transportation of commuters between the work-place and home. *See Random House Unabridged Dictionary* 1665 (2nd ed. 1993) (Defining "rideshare" as "of or pertaining to sharing rides or transportation, esp[ecially] by commuters"). The word "commuter" is usually understood to mean "one who travels back and forth between a city and an outside residence." *Webster's New International Dictionary* 542 (2nd ed. 1959). The sole purpose of the Fleet shuttle-bus service is to transport employees over a short-distance between the work-place and a satellite parking area. Because it is not used for the purpose of commuting, the Fleet shuttle-bus parking arrangement is not a "rideshare program" for purposes of section 51(2).

Fleet argues that our interpretation will create an unworkable exception to rideshare immunity because, as a practical matter, there is no way to distinguish between rideshare programs that transport employees from a central parking lot two miles away from the work-place, as in this case, and parking areas located fifty to 100 miles away,

that are obviously intended for the purpose of conserving energy and assisting employees in their commute to and from work. We do not agree. In this case, the only parking facility provided by Fleet for its employees was the satellite parking area located between one and two miles from the work-place. Employees who could not park in the Fleet parking lot were obliged to park on the street for the day and run the risk of receiving a parking ticket. The shuttle-service bore no relation to energy conservation, nor was it intended to assist employees in their commute to work. The sole function of the shuttle-service was to facilitate parking for Fleet employees. The shuttle-bus itself was nothing more than an adjunct of the parking lot, and should not be accorded immunity as a "rideshare program." [3]

■■■ Croteau–Robinson also contends that payment of her full salary during her absence from work was in lieu of benefits and should be treated as an acceptance of her injury pursuant to 39 M.R.S.A. § 51–B.[4] *Stickles v. United Parcel Serv.,* 554 A.2d 1176, 1181, n. 3 (Me.1989). We disagree. In *Stickles,* we held that, notwithstanding the employee's acceptance of wage replacement benefits in place of workers' compensation, the employer's failure to file a timely notice of controversy constituted an acceptance of the employee's claim of injury. *Id.* Without such a rule, an employee who is encouraged by the early pay system to forego legal counsel may be lulled into giving up compensation benefits in favor of wage-replacement benefits that may be discontinued at any time. *Id.*

---

**3.** Fleet's argument in this regard is further diminished by the fact that Croteau–Robinson was returning from a lunch break at the time of her injury and not "commuting" in the usual sense of the word.

**4.** Subsection 51–B(7) provides, in pertinent part:

If the employer, prior to making payments under subsection 3, controverts the claim to compensation, he shall file with the commission, within 14 days after an event which gives rise to an obligation to make payments under subsection 3, a notice of controversy in a form prescribed by the commission....

If, at the end of the 14–day period in subsection 3..., the employer has not filed the notice required by this subsection, he shall begin payments as required under those subsections. In the case of compensation for incapacity under subsection 3, he may cease payments and file with the commission a notice of controversy, ... no later than 44 days after an event which gives rise to an obligation to make payments under subsection 3. Failure to file the required notice of controversy prior to the expiration of the 44–day period, ... constitutes acceptance by the employer of the compensability of the injury or death....
39 M.R.S.A. § 51–B(7) (1989).

Unlike the situation in *Stickles*, however, Fleet filed a timely notice of controversy. Subsection 51–B(8) provides that "[i]f, within the 44–day period established in subsection 7 and after the payment of compensation for incapacity without an award, the employer elects to controvert the claim to compensation for incapacity, the payment of compensation shall not be considered to be an acceptance of the claim or an admission of liability." 39 M.R.S.A. § 51–B(8) (1989). The risk that an employee will be lulled into failing to pursue her rights under the Act is greatly reduced when an employer files a timely notice of controversy. We discern no legislative intent to prevent employers who have timely controverted an injury from providing short-term wage-continuation to relieve the financial burden of an injury or disability, nor are we persuaded of any compelling policy reason for discouraging such a practice. *See Bergeron v. Knapp Shoe*, W.C.B.App.Div. 740, 741–42 (Me.1993) (Payment of salary under a similar wage continuation policy during an absence from work is not in lieu of compensation benefits and does not constitute an acceptance of the injury in a case in which the employer filed a timely notice of controversy).

Because the Commissioner erroneously denied the petition pursuant to the rideshare immunity, and made no findings concerning whether Croteau–Robinson's injury arose out of and in the course of her employment, we must remand for an analysis of the issue of work-causation.

The entry is:

The decision of the Workers' Compensation Commission is vacated. Remanded to the Board for further proceedings consistent with the opinion herein.

CLIFFORD, RUDMAN, and DANA, JJ., concurring.

GLASSMAN, Justice, with whom WATHEN, Chief Justice, and ROBERTS, Justice, join, dissenting.

I respectfully dissent. The law of statutory construction is well established that "we examine other indicia of legislative intent, such as its legislative history, *only when the*

*plain language is ambiguous.*" *Berube v. Rust Engineering*, 668 A.2d 875, 877 (Me. 1995) (citing *Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994)) (emphasis added). Furthermore, we have repeatedly stated that we will uphold the Commission's interpretation of the Workers' Compensation Act "unless the statute plainly compels a different result." *Id.* (quoting *Nielsen v. Burnham & Morrill*, 600 A.2d 1111, 1112 (Me.1991)). In my opinion, the Court has failed to consider either of these principles.

The language of section 51(2) plainly applies to the facts of the instant case: The employer, Fleet Bank, sponsored a shuttle-bus "having as its sole purpose the mass transportation of employees to and from work...." 39 M.R.S.A. § 51(2). Nothing in the language of the statute requires either minimum travel distances or energy savings before such a program may qualify for statutory immunity. Nor does the statutory language suggest that "to and from work" requires that transportation be provided the entire distance from the employee's *home* to place of work to fall within the purview of the statute. The Court's interpretation impermissibly imposes requirements not within the plain language of the statute. The Commission determined that section 51(2) is applicable to Fleet's shuttle-bus program, and the statutory language does not "plainly compel[ ] a different result." *Berube*, 668 A.2d at 875. Accordingly, I would affirm the decision of the Workers' Compensation Commission.