2000 ME 62

**Paul J. MOREAU**

v.

**S.D. WARREN CO.**

Supreme Judicial Court of Maine.

Argued Feb. 8, 2000.

Decided April 12, 2000.

James J. MacAdam (orally), James G. Fongemie, McTeague, Higbee, MacAdam, Case, Cohen & Whitney, P.A., Topsham, for employee.

Thomas E. Getchell (orally), Portland, for employer.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] S.D. Warren Co. appeals from a decision of the Workers' Compensation Board granting Paul J. Moreau's petition for award arising from a 1986 injury. The Board concluded that the provision of in-house medical treatment in November 1988 was a payment that extended the ten-year statute of repose to November 1998, and Moreau's petition, filed in June 1998, was not time-barred. *See* 39 M.R.S.A. § 95 (Supp.1992), *repealed by* P.L.1991, ch. 885, § A–7. We vacate the decision.

[¶ 2] Moreau suffered a work-related right foot injury on March 4, 1986, while employed by S.D. Warren. S.D. Warren voluntarily paid benefits ending on June 30, 1986. It filed a first report of injury, but it did not file a notice of controversy, thereby accepting the compensability of the injury pursuant to the former "early pay system." *See* 39 M.R.S.A. § 51–B(7) (1989), *repealed by* P.L.1991, ch. 885, § A–7.

[¶ 3] On November 7, 1988, Moreau went to S.D. Warren's in-house medical department with complaints of right foot pain. He was examined by a staff nurse and referred to the staff physician. Moreau told the nurse that his foot pain was related to his 1986 work-related injury.

[¶ 4] Moreau filed a petition to fix in June 1998 seeking payment by S.D. Warren of medical bills relating to the right foot injury. The Board concluded that Moreau's visit to the in-house medical department on November 7, 1988, constituted a payment of "nursing services" pursuant to former 39 M.R.S.A. § 52,[1] and,

1. Former section 52 provides, in pertinent part:

therefore, the ten-year statute of repose began to run on that date.

[¶ 5] At the time of the 1986 injury, the statute of limitations provided, in pertinent part:

> Any employee's claim for compensation under this Act shall be barred unless an agreement or a petition as provided in section 94 shall be filed within 2 years after the date of the injury, or, if the employee is paid by the employer or the insurer, without the filing of any petition or agreement, within 2 years of any payment by such employer or insurer for benefits otherwise required by this Act. The 2–year period in which an employee may file his claim does not begin to run until his employer, if he has actual knowledge of the injury, files a first report of injury as required by section 106 of the Act.... No petition of any kind may be filed more than 10 years following the date of the latest payment made under this Act. For the purposes of this section, payments of benefits made by an employer or insurer pursuant to section 51–B shall be considered payments under a decision unless a timely notice of controversy has been filed.

39 M.R.S.A. § 95 (1989), *repealed and replaced by* P.L.1991, ch. 885, § A–7, A–8 (codified as 39–A M.R.S.A. § 306 (Pamph. 1999)). In 1989, the last sentence of section 95 was amended to add the following language: "For the purposes of this section, payments of benefits made by an employer or insurer pursuant to section 51–B *or 52* are considered payments under

a decision *pursuant to a petition*, unless a timely notice of controversy has been filed." P.L.1989, ch. 256, § 4, *repealed and replaced by* P.L.1991, ch. 885, § A–7, A–8 (emphasis added).[2]

[¶ 6] Relying on *Wallace v. S.D. Warren*, 640 A.2d 203, 204–05 (Me.1994), S.D. Warren contends that the provision of in-house medical treatment cannot extend the ten-year statute of repose. In *Wallace*, 640 A.2d at 203, the employee sought treatment at S.D. Warren's in-house medical department and was fitted with a back support. The employer filed a first report of injury but did not file a notice of controversy. *Id.* The former Workers' Compensation Commission concluded that the employee's first petition for award filed five years later was time-barred pursuant to the two-year statute of limitations. *Id.* The employee contended on appeal that the provision of in-house medical treatment constituted a "payment made under this Act" pursuant to the second-to-last sentence of section 95, providing: "No petition of any kind may be filed more than 10 years following the date of the latest payment made under this Act." 39 M.R.S.A. § 95 (1989), *repealed and replaced by* P.L.1991, ch. 885, § A–7, A–8. We agreed with the Commission that the employee's claim was barred pursuant to the two-year statute of limitations, and, therefore, we did not reach the issue of the ten-year statute of repose. *Wallace*, 640 A.2d at 204. Interpreting the last sentence of section 95, as it appeared prior to the 1989 amendment,[3] we concluded that the provision of in-house medical treat-

---

**§ 52. Duties and rights of parties as to medical and other services; cost**

An employee sustaining a personal injury arising out of and in the course of his employment or is disabled by occupational disease shall be entitled to reasonable and proper medical, surgical and hospital services, nursing, medicines, and mechanical, surgical aids, as needed, paid for by the employer....

39 M.R.S.A. § 52 (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified as 39–A M.R.S.A. § 206 (Pamph.1999)).

2. The Board concluded, and S.D. Warren concedes, that, because Moreau's claim of injury had not expired on the effective date of the 1989 amendment, the amended statute may be applied retroactively to his 1986 date of injury. *See Rutter v. Allstate Auto. Ins. Co.*, 655 A.2d 1258, 1259–60 (Me.1995).

3. We expressly declined to interpret section 95 as that statute was amended in 1989. *Wallace*, 640 A.2d at 203 n. 1.

ment was not a payment pursuant to section 51–B and could not be considered a payment pursuant to a decision for purposes of tolling the two-year statute. We stated:

> [T]he provision of medical services at S.D. Warren's in-house medical department, which included the provision of a back brace to Wallace, does not constitute a payment pursuant to section 51–B for purposes of the last sentence of section 95. Section 51–B(4) imposes a compensation or reimbursement scheme for medical expenses and aids. It is difficult to construe its language to apply to the direct provision of services at an employer's first aid station. Section 51–B(7) details how an employer can file a notice of controversy if, prior to making payments, the employer controverts the claim. It is inconceivable that the Legislature contemplated the filing of such a notice before the provision of first aid. Because the provision of medical services at S.D. Warren's medical department was not a payment of benefits pursuant to section 51–B, even accepting Wallace's argument that the services constituted payments under the Act, the two year statute of limitations commenced to run when S.D. Warren filed its first report of injury. Because approximately 5 ½ years elapsed between the filing of the first report and the filing of the petition for award, the petition is barred by section 95.

4. We stated:

> That the period of limitations could begin on the date of the provision of medical services is based upon Wallace's argument that the provision of medical services at the in-house medical department constitute a "payment under the Act" as paraphrased in the first and penultimate sentence of section 95. However, we wish to make clear that we do not decide whether the provision of services at an in-house medical department constitute "payments under the Act" for purposes of invoking the 2 year statute of limitations or the 10 year repose period. Instead, we limit our holding to finding only that the provision of medical services at S.D. Warren's in-house medical depart-

*Wallace,* 640 A.2d at 204–05 (quotation marks and footnote omitted).

[¶ 7] The present appeal requires us to reach an issue that we expressly declined to address in *Wallace,* and that is, whether the provision of in-house medical treatment is a "payment made under this Act," for the purpose of extending the ten-year statute of repose.[4] S.D. Warren contends that our conclusion in *Wallace* that in-house medical treatment is not a payment pursuant to section 51–B also controls the determination of whether the treatment is a payment pursuant to section 52.

[¶ 8] Section 51–B was enacted in 1983 as part of the former "early pay system" for the purpose of encouraging informal acceptance of claims and reducing attorney involvement.[5] *See Wentworth v. Manpower Temp. Servs.,* 589 A.2d 934, 938 (Me. 1991); *Stickles v. United Parcel Serv.,* 554 A.2d 1176, 1178 (Me.1989). Subsections 3 and 4 of section 51–B outlined the employer's obligation to pay incapacity and medical benefits within specified time frames. Subsection 51–B(4), addressing medical benefits, provided that "[c]ompensation for medical expenses, aids and other services under section 52 is due and payable within 90 days from the date a request is made for payment of these expenses." 39 M.R.S.A. § 51–B(4) (1989) *amended by* P.L.1989, ch. 256, § 1, *repealed by* P.L. 1991, ch. 885, § A–7.[6]

> ment in this instance did not constitute a payment *pursuant to section 51–B.*
> *Id.* at 204 n. 2 (emphasis in original).

5. Section 51–B and the "early pay system" were repealed by The Maine Workers' Compensation Act of 1992, P.L.1991, ch. 885, § A–7.

6. Consistent with the early pay system, section 52 was amended in 1985 to require that the "employer shall … make prompt payment for [medical services and aids] to the provider or supplier or reimburse the employee, in accordance with section 51–B, subsection 4 …." P.L.1985, ch. 729, § 2, *repealed and replaced by* P.L.1991, ch. 885, § A–7, A–8.

[¶ 9] Pursuant to the early pay system, failure of the employer to timely controvert a claim for benefits resulted in the employer's acceptance of the employee's claim of injury or, in the case of medical benefits, the reasonableness of the medical treatment.[7] Subsection 51–B(4) does not provide an independent entitlement to medical treatment; it provides a procedural mechanism for the payment of medical benefits incurred under section 52 and a penalty for failing to timely controvert a claim. The employer's obligation to pay medical benefits pursuant to subsection 51–B(4) is fully coextensive with its obligation under section 52. Because we find no basis in the statutory language for distinguishing a payment of medical benefits pursuant to section 51–B from a payment pursuant to section 52, we conclude that *Wallace* controls, and the provision of in-house medical treatment is not a "payment made under this Act" for purposes of extending the ten-year statute of repose. Because the "latest payment made under this Act" to Moreau was June 30, 1986, his petition, filed in June 1998, was beyond the ten-year period.

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

ALEXANDER, J., files dissenting opinion joined by CLIFFORD, DANA, JJ.

ALEXANDER, J., with whom CLIFFORD and DANA, JJ., join, dissenting.

[¶ 10] I respectfully dissent. The Board concluded that Moreau's visit to the in-house medical department in 1988 was a payment pursuant to section 52,[8] and, therefore, the ten-year statute of repose began to run on that date. The Board explained the rationale for the decision as follows:

> I can find no persuasive reason to treat the provision of such services differently simply because they are provided by the employer's own first aid department. That department's primary purpose is to treat work-place injuries. If the employer disputes the work-relatedness of the treatment or evaluation requested it can file a notice of controversy. If it does not, its treatment or evaluation tolls the statute.

I would affirm the decision of the Board.[9]

[¶ 11] As the Court's opinion states, the present case is distinguishable from *Wal-*

---

**7.** 39 M.R.S.A. § 51–B(7) states:

> **7. Notice of controversy.** If the employer, prior to making payments under subsection 3, [incapacity benefits] controverts the claim to compensation, he shall file with the commission, within 14 days after an event which gives rise to the obligation to make payments under subsection 3, a notice of controversy in a form prescribed by the commission. If the employer, prior to making payments under subsection 4, [medical benefits] controverts the claim to compensation, he shall file with the commission, within 90 days after an event which gives rise to an obligation to make payments under subsection 4, a notice of controversy in a form prescribed by the commission....
>
> If, at the end of the 14–day period in subsection 3 or the 90–day period in subsection 4, the employer has not filed the notice required by this subsection, he shall begin payments as required under those subsections.... Failure to file the required notice of controversy prior to the expiration of the 44–day period, in the case of compensation under subsection 3, constitutes acceptance by the employer of the compensability of the injury or death.... Failure to file the required notice of controversy prior to the expiration of the 90–day period under subsection 4 constitutes acceptance by the employer of the extent of impairment claimed or the reasonableness of the medical services claimed.
>
> ....

39 M.R.S.A. § 51–B(7) (1989) *amended by* P.L.1989, ch. 256, § 3, *repealed by* P.L.1991, ch. 885, § A–7.

**8.** See the Court's opinion, ¶ 4, n. 1.

**9.** The Board's decision is consistent with two decisions of the former Workers' Compensation Commission Appellate Division, *Pottle v.*

lace v. S.D. Warren, 640 A.2d 203, 204–05 (Me.1994), in which we held that in-house treatment was not a payment pursuant to section 51–B. The issue in this case is the issue we expressly declined to address in *Wallace, id.,* at 204, n. 2, i.e., whether the provision of in-house medical services is a "payment under the Act" for the purpose of extending the ten-year statute of repose.[10] In *Wallace,* we interpreted section 95 as that statute appeared prior to the legislative amendments of 1989. *Id.* at 203, n. 1. The 1989 legislation amended the last sentence of section 95 and added the requirement that "payments of benefits made by an employer or insurer pursuant to section 51–B *or 52* are considered payments under a decision *pursuant to a petition,* unless a timely notice of controversy has been filed." P.L.1989, ch. 256, § 4, *repealed by* P.L.1991, ch. 885, § A–7 (emphasis added).

[¶ 12] When the Legislature amended the last sentence of section 95 to include a "payment" under section 52, it clarified what it meant by a "payment." Section 52 describes what an injured employee is entitled to and it is *services* "paid for by the employer." Former section 52 provided, in pertinent part:

### § 52. Duties and rights of parties as to medical and other services; cost

An employee sustaining a personal injury arising out of and in the course of his employment or is disabled by occupational disease shall be entitled to reasonable and proper medical, surgical and hospital services, nursing, medicines, and mechanical, surgical aids, as needed, paid for by the employer ....

After the 1989 amendment, payments by employers were understood to include "medical ... services ... paid for by the employer ...." Medical services paid for by the employer must include the provision of medical services provided by a nurse or a doctor employed by the employer. Although the method of payment by the employer might be different in cases involving in-house medical treatment, the difference, as a practical matter, is of little consequence.

[¶ 13] Pursuant to the Court's interpretation, the availability of in-house medical treatment may become a trap for lulling employees into failing to timely protect their position regarding valid workers' compensation claims. Employees of large employers with in-house medical depart-

*Bath Iron Works Corp.,* WCC App. Div. 2582, 2583–84 (Me.1988); *Ventry v. Bath Iron Works Corp.,* WCC App. Div. 2869, 2870–71 (Me.1988), both of which were vacated on other grounds, *see Pottle v. Bath Iron Works Corp.,* 551 A.2d 112, 114–15 (Me.1988); *Harvie v.. Bath Iron Works Corp.,* 561 A.2d 1023, 1024–25 (Me.1989). In *Pottle,* the Appellate Division stated:

The employer argues provision of first aid treatment is, in essence, a charitable contribution and can never be a basis for tolling the statute of limitations. In the cases of work-related injuries provision of treatment is the discharge of a statutory obligation and not merely a charitable act. Under the employer's analysis, small employers who send their employees to outside clinics for minor treatment would have the statute of limitations tolled for claims against them, while large, sophisticated employers with industrial medicine departments staffed by physicians could render even more significant and substantial treatment, including the prescription of medicines, without in-

curring the same risk. There is no logical rationale for such a distinction.
*Pottle,* WCC App. Div. at 2584.

10. *Wallace* states:

That the period of limitations could begin on the date of the provision of medical services is based upon Wallace's argument that the provision of medical services at the in-house medical department constitute a "payment under the Act" as paraphrased in the first and penultimate sentence of section 95. However, we wish to make clear that we do not decide whether the provision of services at an in-house medical department constitute "payments under the Act" for purposes of invoking the 2 year statute of limitations or the 10 year repose period. Instead, we limit our holding to finding only that the provision of medical services at S.D. Warren's in-house medical department in this instance did not constitute a payment *pursuant to section 51–B.*
*Wallace,* 640 A.2d at 204, n. 2.

ments, unlike those of small employers, may find it necessary to file petitions for award with the Board within two years of their injuries or be later barred under the statute of limitations. Small employers without in-house medical facilities will not have the same advantage as large employers in foreclosing employees' claims. The Court's decision will result in disparate treatment for large and small employers and their employees, and could greatly increase litigation and the formal processing of claims before the Board. There is nothing in the policy of the Workers' Compensation Law to support such a result. Accordingly, I would affirm the Board's conclusion that the provision of in-house medical treatment is a "payment under this Act."