1998 ME 90

**Lucien LONGTIN**

*v.*

**CITY OF LEWISTON**

and

**Northern General Services.**

Supreme Judicial Court of Maine.

Argued Feb. 4, 1998.
Decided April 30, 1998.

Robert A. Laskoff (orally), Lewiston, for employee.

Gerard O. Fournier (orally), Lewiston, for employer.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] Lucien Longtin appeals from a decision of the Workers' Compensation Board granting his employer's petition for review and reducing his partial benefits based on his refusal of available work, pursuant to 39 M.R.S.A. § 55–B (Supp.1990) (effective for injuries occurring after Sept. 30, 1989 and before Oct. 17, 1991), *repealed and replaced by* P.L.1991, ch. 615, § D–7. Longtin contends that because his acceptance of the reinstatement offer would have resulted in a reduction of his retirement benefits upon early retirement, the offer was not "available" for purposes of former section 55–B.

---

1. Given Longtin's current insistence that he should not be required to work full-time, it is not clear why he affirmatively sought reinstatement.

We disagree and affirm the decision of the Board.

[¶ 2] Longtin suffered a work-related injury on March 26, 1990, while employed by the Lewiston Fire Department. He continued to work as a firefighter over the next three years, but by 1993 was no longer physically able to perform many aspects of the job. He applied for disability retirement from the Fire Department and in November of 1993, after nineteen years as a firefighter, began receiving disability pension benefits.

[¶ 3] Pursuant to the collective bargaining agreement between the City and its firefighters, Longtin would have been eligible for early retirement at age forty-eight at one-half his average final compensation after twenty-four years of service. Any time during which Longtin receives disability benefits is counted as "time in" for purposes of calculating those years of service. Therefore, if he continues to receive those benefits during the next approximately five years, he will be eligible for early retirement. According to the terms of his disability contract, however, Longtin may not receive disability benefits if he earns more than $30,500 in a year, inclusive of the disability benefits totalling roughly $19,750. Therefore, to preserve his entitlement to maximum retirement benefits at early retirement, Longtin contends that he cannot earn more than $10,000 through employment for the next five years. Since he began receiving disability benefits, Longtin has worked part-time, but never earned more than that $10,000 "ceiling."

[¶ 4] In September 1994, Longtin filed a petition for reinstatement pursuant to 39–A M.R.S.A. § 218 (Supp.1997).[1] In response, the Fire Department offered him a full-time position as a fire inspector paying close to his pre-injury wage. The offered position would have paid approximately $23,000 annually. Thus, acceptance of the position would have disqualified Longtin for his disability benefits. The parties agree that time spent as a fire inspector could not be included as years of service for the twenty-four-year firefighter special early retirement.[2]

---

2. Longtin contends that if he retires at age forty-eight after accepting the fire inspector position, he would receive $966.45 a month pursuant to the standard City retirement, as opposed to

[¶ 5] Longtin therefore refused the fire inspector position, and the City filed a petition for forfeiture pursuant to 39–A M.R.S.A. § 218(5) along with a petition for review pursuant to 39 M.R.S.A. § 55–B (Supp.1990). *See* P.L.1989, ch. 575 (effective for injuries occurring after Sept. 30, 1989 and before Oct. 17, 1991), *repealed and replaced by* P.L.1991, ch. 615, § D–7. The Board granted the employer's petition for review, but concluded that subsection 218(5) did not apply because Longtin had withdrawn his petition for reinstatement prior to the hearing.[3]

[¶ 6] On the employee's petition for review, the Board concluded that Longtin's current partial earnings were prima facie evidence of his work-capacity, but that the employer had rebutted the presumption by providing an opportunity for Longtin to earn close to his pre-injury wage as a fire inspector. *See Fecteau v. Rich Vale Constr., Inc.,* 349 A.2d 162, 166 (Me.1975). The Board made the following findings and conclusions:

> The employee's disinclination to take the fire inspector job, and the availability of that job to the employee is ... relevant on the issue of *ongoing earning capacity.* There is basically little disagreement that the employee could have physically performed the position and could have earned $455.25/week. Absent the employee's concerns regarding participation in the firefighter's retirement plan, it seems likely that the employee would today be a fire inspector with the City of Lewiston. The Board finds that it is proper to consider the wages the employee could be earning with the city in its evaluation of the employee's earning capacity regardless of the *possibly* vested interest he may have in continuing to receive disability benefits, or in eventually receiving his firefighter re-

$1,687.23 a month under the firefighter retirement.

**3.** Although subsection 218(5) may be applied retroactively to a pre–1993 injury when an employee files a petition for restoration, *see id.,* the employer concedes that it did not bring a timely appeal from the Board's decision not to apply subsection 218(5), and, therefore, may not challenge that decision on appeal. *See Guaranty Fund Mgt. Servs. v. Workers' Compensation Bd.,* 678 A.2d 578, 583 (Me.1996). Because the issue is not preserved, we express no opinion whether,

tirement benefits. Nothing in this decision, of course, prevents the employee from continuing to receive his disability pension. The decision herein merely imputes an earning capacity which the Board feels is an accurate reflection of the employee's ability to earn.

The Board awarded benefits of $36.37 per week, representing two-thirds of the difference between his pre-injury average weekly wage and the wage he would have earned as a fire inspector. The Board denied Longtin's motion for additional findings of fact and we granted his petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1997).

[¶ 7] Longtin's injury preceded the effective date of title 39–A, and, therefore, section 214(1), authorizing the termination of incapacity benefits in certain circumstances when an employee refuses an offer of reinstatement, does not apply. *See P.L.1991, ch. 885,* § A–10 (effective Jan. 1, 1993). Accordingly, because Longtin's injury occurred in 1990, his entitlement to partial incapacity benefits is governed by former 39 M.R.S.A. § 55–B, *repealed and replaced by* P.L.1991, ch. 615, § D–7. *See Tripp v. Philips Elmet Corp.,* 676 A.2d 927, 928 n. 1 (Me.1996).[4] Section 55–B provides, in pertinent part:

> While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to 2/3 the difference, due to the injury, between his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury ....
>
> ....

after filing a petition for reinstatement, an employee can eliminate an employer's right to invoke the protections of subsection 218(5) by withdrawing the petition for reinstatement.

**4.** Because we conclude that it would make no difference on these facts, we decline Longtin's invitation to consider whether the concepts of "bona fide offer of reasonable employment" and "good cause for refusal" articulated in the newer provision, section 214(1), were inherent in the language of 39 M.R.S.A. § 55–B.

*For purposes of determining an injured employee's degree of incapacity under this section, the commission shall consider the availability of work that the employee is able to perform in and around the employee's community and the employee's ability to obtain such work considering the effects of the employee's work-related injury.* If no such work is available in and around the employee's community or if the employee is unable to obtain such work in and around the employee's community due to the effects of a work-related injury, the employee's degree of incapacity under this section is 100%.

39 M.R.S.A. § 55–B (Supp.1990), *repealed and replaced by* P.L.1991, ch. 615, § D–7 (emphasis added).

■ [¶ 8] Longtin contends that because acceptance of the fire inspector position would have resulted in a reduction of his expected early retirement benefits, the reinstatement position was not reasonably "available" to him. The primary considerations in determining whether post-injury employment is available are whether the employee is physically capable of performing the work and whether the employment opportunity is actually open to the employee. *See Levesque v. Shorey,* 286 A.2d 606, 609 (Me.1972). The Board here found that Longtin was capable of performing the offered work and that the position is actually open to him. Indeed, the position appears to have been specifically tailored to his skills, experience and physical limitations.

[¶ 9] Nonetheless, Longtin, relying on the reasoning of *St. Joe Container v. Workmen's Compensation App. Bd.,* 534 Pa. 347, 633 A.2d 128, 132 (1993), urges us to conclude that the effect upon his retirement renders the position unavailable to him. In that case, the Pennsylvania Supreme Court held that a post-injury nonunion reinstatement position was not available to the employee when continued performance of the job after six months would result in a loss of union seniority and associated benefits. *See id.* The court determined that "the extent of injury caused in the work-place may reasonably include the loss of qualitative benefits associat-

ed with the claimant's former position *under certain limited circumstances." See id.* at 130 (emphasis added). The court went on to conclude that the total loss of job security, seniority, time-and-a-half pay for overtime, bidding rights for higher paying jobs and the intangible value of his length of service and union association could not be "recouped" through the employee's acceptance of a non-union shipping clerk position. *Id.* at 131. Other courts considering similar circumstances have reached different conclusions. *See, e.g., Hamlin v. Michigan Seat Co.,* 112 Mich.App. 84, 314 N.W.2d 804, 806 (1981) (failure of union employee to accept nonunion favored work justified termination of benefits); *Roseburg Forest Prods. v. Wilson,* 110 Or.App. 72, 821 P.2d 426, 427–28 (1991) (union employee denied benefits when he refused to cross picket line for reinstatement position).[5]

[¶ 10] We do not find the conclusions in the *St. Joe Container* opinion to be applicable here. There, the unique facts relating to the employee's union status persuaded the court that the employee could not reasonably be called upon to give up the qualitative benefits springing from that status where the offer of reinstatement was not commensurate with those benefits. Here, the Board weighed the claimed future financial effect of accepting the offer against the offer of full-time employment in Longtin's chosen field and concluded that the job was not rendered unavailable because of its effect on his retirement plans. Because an overriding goal of the Act is to return the injured employee to safe and gainful employment as soon as possible, the Board must carefully scrutinize any reason presented for declining offered employment. To allow an employee the choice to remain underemployed in order to maximize other personal financial benefits would shift the financial responsibility for maximizing those benefits to the former employer and would expand employers' liability beyond that contemplated by the Legislature.

[¶ 11] We will not overturn a decision of the Board unless it can be said that the Board lacks a rational basis for its applica-

5. *See also* 1C Arthur Larson, The Law of Workmen's Compensation § 57.66(a) (1993).

tion of law to the facts. *See Smith v. Great No. Paper Inc.*, 636 A.2d 438, 439 (Me.1994) (citing *Dorey v. Forster Mfg. Co.*, 591 A.2d 240, 241–42 (Me.1991)). The availability of work within his capacity and skills left Longtin with a choice. He could have accepted the position and maintained his current level of income for the next five years, or longer. Acceptance of the position would not have required him to relinquish all retirement benefits, nor would he have been prevented from retiring at age forty-eight with some retirement income. Longtin's refusal of the position, on the other hand, while resulting in a reduction of compensation benefits, does not prevent Longtin from receiving disability benefits and working part-time, as he has done, nor is he prevented from achieving his goal of retiring at age forty-eight at the maximum benefit level.

[¶ 12] Employment will often carry with it collateral financial consequences. While it cannot be said that such consequences will never render employment "unavailable," the Board's primary focus pursuant to the goals of the Act must be on whether the employee is capable of performing the employment and whether that employment is actually open to him. On the facts before it, the Board could rationally conclude that Longtin was capable of performing the offered job, that the job was actually open to him, and that the job did not become unavailable solely because the income from that employment would have an impact on his retirement plans. Consequently, the Board did not err in calculating his benefits accordingly.

The entry is:

Decision of the Workers' Compensation Board affirmed.

