2000 ME 93

**Charles V. DORR**

v.

**The BRIDGE CONSTRUCTION CORPORATION and Commercial Union Insurance Company.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 26, 2000.

Decided May 19, 2000.

Benjamin I. Grant, Kaplan & Grant, Portland, for employee.

Ronald A. Ducharme, Christopher J. Cotnoir, Wheeler & Arey, P.A., Waterville, (Commercial Union Ins. Co.), Thomas R. Kelly, John M. McCallum, Robinson, Kriger & McCallum, Portland, (for Hanover Ins. Co.), Glenn H. Robinson, Thompson & Bowie, Portland, (for Liberty Mutual Ins. Co.), for employers and insurers.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Commercial Union Insurance Company appeals from a decision of the Workers' Compensation Board. The first issue on appeal is whether Commercial Union's failure to timely controvert a claim of injury pursuant to the former early pay system, 39 M.R.S.A. § 51–B (1989), *repealed by* P.L.1991, ch. 885, § A–7, precludes it from seeking an apportionment against a previous insurer pursuant to 39–A M.R.S.A. § 354 (Supp.1998), *amended by* P.L.1999, ch. 354, § 9. We conclude that the Board erred in determining that Commercial Union is unable to seek of appor-

---

tionment liability in light of its section 51–B violation and vacate the decision, in part. The second issue is whether Commercial Union's approved agreement with the employee to pay 7% permanent impairment benefits related to a 1989 injury, precludes it from seeking reimbursement against a prior insurer for that insurer's proportion of responsibility for permanent impairment. Because we conclude that the approved agreement only resolved liability for permanent impairment related to the single 1989 injury, and did not address permanent impairment related to other injuries, we affirm the Board's conclusion with respect to permanent impairment.

[¶ 2] Charles V. Dorr was employed by The Bridge Construction Corporation from 1979 to 1996. This appeal arises from petitions for award filed on behalf of Dorr by successive insurers of The Bridge Construction Corporation. The relevant dates of Dorr's injuries for purposes of this appeal are November 25, 1985, while Liberty Mutual Insurance Company was the insurer, and July 27, 1987, January 12, 1989, and September 7, 1990, while Commercial Union was the insurer.[1]

[¶ 3] The Board granted the insurers' petitions for award and apportionment relating to the 1985, January 12, 1989, and 1990 injuries, but denied the petitions related to the July 27, 1987 injury. The Board concluded further, however, that, because Commercial Union accepted liability for the 1987, 1989 and 1990 injuries by failing to timely controvert the claim pursuant to the early pay system, Commercial Union could not seek an apportionment from Liberty Mutual. The Board concluded further that because Commercial Union voluntarily agreed to pay permanent impairment benefits for the January 12, 1989 injury, it could also not obtain reimbursement against Liberty Mutual for permanent impairment benefits. The Board stated:

> Commercial Union also paid Employee 7% whole person permanent impairment benefits, pursuant to a Permanent Impairment Agreement approved on August 15, 1991. This Agreement establishes that 7% whole person impairment was attributable to the 1989 injury. Commercial Union voluntarily entered into this Agreement with Employee; ordering other Insurers to reimburse Commercial Union for a portion of benefits paid pursuant to this Agreement would, in effect, annul the Agreement. Commercial Union has not alleged that it entered into this Agreement through mistake of fact or fraud, and there is no basis for annulling it.

[¶ 4] We granted Commercial Union's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Pamph.1999).[2]

[¶ 5] Commercial Union persuasively contends that its acceptance of liability pursuant to the former early pay system does not preclude an apportionment for medical or incapacity benefits for the July 27, 1987, January 12, 1989, and September 7, 1990 dates of injury. Section 51–B was

---

1. The proceeding began as a petition for apportionment filed by Commercial Union. During the pendency of this petition, we decided *Rosetti v. Land Reclamation,* 1997 ME 197, ¶¶ 5–6, 704 A.2d 312, 313, holding that arbitration before the Bureau of Insurance is the exclusive procedure for apportioning liability between insurers and, therefore, the Board had no authority to pursuant to 39–A M.R.S .A. § 354 (Supp.1998), *amended by* P.L.1999, ch. 354, § 9. The Board and the parties agreed to continue the proceeding in order to determine whether compensable injuries occurred on the alleged dates of injury. The insurers also stipulated that all medical

and disability payments are reasonable and proper; the issue, therefore, was not whether the employee was entitled to the medical/incapacity benefits that he received, but the liability of the various insurers for payment.

2. To the extent that Liberty Mutual has attempted to raise issues for appeal, those issues cannot be heard because Liberty Mutual failed to pay a filing fee or perfect a petition for appellate review pursuant to 39–A M.R.S.A. § 322. *See Longtin v. City of Lewiston,* 1998 ME 90, ¶ 5, n. 3, 710 A.2d 901, 903, n. 3.

adopted in 1983 as part of the "early pay system" for the purpose of encouraging employees to bring their claims directly to their employers without attorney involvement.[3] *Wentworth v. Manpower Temp. Servs.*, 589 A.2d 934, 938 (Me.1991); *Stickles v. United Parcel Serv.*, 554 A.2d 1176, 1178 (Me.1989). Failure of the employer to either timely pay benefits or controvert the claim constituted an acceptance of the employee's injury as claimed.[4] *Wentworth*, 589 A.2d at 937; *Stickles*, 554 A.2d at 1180.

[¶ 6] The applicable apportionment statute, section 354, provides:

1. Applicability. When 2 or more occupational injuries occur, during either a single employment or successive employments, that combine to produce a single incapacitating condition and more than one insurer is responsible for that condition, liability is governed by this section.

2. Liability to employee. If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.

3. Subrogation. Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Any such insurer may, in accordance with rules adopted by the Superintendent of Insurance, file a request for appointment of an arbitrator to determine apportionment of liability among the responsible insurers. The arbitrator's decision is limited to a choice between the submissions of the parties and may not be calculated by averaging. Within 30 days of the request, the Superintendent of Insurance shall appoint a neutral arbitrator who shall decide, in accordance with the rules adopted by the Superintendent of Insurance, respective liability among or between insurers. Arbitration pursuant to this

---

3. Title 39 was repealed and replaced by Title 39–A. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, §§ A–7, A–8 (effective January 1, 1993). Although the early pay system has been repealed, neither party has alleged that section 51–B is inapplicable to Commercial Union's failure to file a timely notice of controversy, which occurred prior to the effective date of the 1993 Act, and therefore established Commercial Union's responsibility for payment.

4. Subsection 7 provides, in pertinent part:
    7. Notice of controversy. If the employer, prior to making payments under subsection 3 [incapacity benefits], controverts the claim to compensation, he shall file with the commission, within 14 days after an event which gives rise to an obligation to make payments under subsection 3, a notice of controversy in a form prescribed by the commission. If the employer, prior to making payments under subsection 4 [medical benefits], controverts the claim to compensation, he shall file with the commission, within 90 days after an event which

gives rise to an obligation to make payments under subsection 4, a notice of controversy in a form prescribed by the commission . . . .
    If at the end of the 14–day period in subsection 3 or the 90–day period in subsection 4, the employer has not filed the notice required by this subsection, he shall begin payments as required under those subsections. . . . Failure to file the required notice of controversy prior to the expiration of the 44–day period, in the case of compensation under subsection 3, constitutes an acceptance by the employer of the compensability of the injury or death. . . . Failure to file the required notice of controversy prior to the expiration of the 90–day period under subsection 4 constitutes acceptance by the employer of the extent of impairment claimed or the reasonableness of the medical services claimed.
    . . . .
39 M.R.S.A. § 51–B(7), *repealed by* P.L.1991, ch. 885, § A–7.

subsection is the exclusive means for resolving apportionment disputes among insurers and the decision of the arbitrator is conclusive and binding among all parties involved. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act.

4. Consolidation. The board may consolidate some or all proceedings arising out of multiple injuries.

39–A M.R.S.A. § 354 (Supp.1998), *amended by* P.L.1999, ch. 354, § 9.[5]

[¶ 7] As Commercial Union contends, the historical underpinning of apportionment is subrogation. *See e.g., Lamonica v. Ladd Holmes*, 1998 ME 190, ¶ 5, 718 A.2d 182, 183–84 (employer unable to apportion against subsequent insurer when employee's claim against subsequent insurer was extinguished by employer's failure to provide timely notice of injury); *Kennedy v. Brunswick Convalescent Ctr.*, 584 A.2d 678, 680 (Me.1991) (employer unable to apportion after employee settled claim against other employer). *See generally, Johnson v. S.D. Warren, Div. of Scott Paper Co.*, 432 A.2d 431, 435–36 (Me.1981). The principle of subrogation is supported by the plain language of subsection 354(3) providing that: "[a]ny insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act ...." 39–A M.R.S.A. § 354(3).

■ [¶ 8] Pursuant to the principle of subrogation, Commercial Union's acceptance of Dorr's claims of injury in no way affects the ability of the employee to seek compensation against the previous insurer, Liberty Mutual. Accordingly, Commercial Union is entitled to "step into the employee's shoes," and seek an apportionment against Liberty Mutual.

[¶ 9] The former Workers' Compensation Commission Appellate Division addressed the issue in *Larochelle v. Crest Shoe Co.*, WCC App. Div. 1021, 1023–24 (Me.1993). In *Larochelle*, the employee suffered her first injury in 1985 while her employer was insured by Liberty Mutual, and a second injury in 1986 while the same employer was insured by Hanover. *Id.* The Hearing Officer ordered Liberty Mutual to pay 50% benefits based on the 1985 injury and Hanover to pay 100% benefits, based on Hanover's failure to file a timely notice of controversy pursuant to section 51–B. *Id.* On appeal, the Appellate Division concluded that the Hearing Officer improperly awarded benefits in excess of 100%, and remanded to the Hearing Officer with instructions to clarify Liberty Mutual's percentage of liability. *Id.* The Appellate Division stated:

> The proper analysis is to determine the extent of incapacity, since [Hanover's date of injury] which is *not* related to the early-pay violation and then determine what portion of that incapacity is caused by Liberty's injury. Any portion not covered by Liberty's injury must be compensated by Hanover. All benefits due the employee simply on account of the early pay system are payable solely by Hanover.

*Id.* In *Larochelle*, the second insurer's early pay violation did not relieve the previous insurer of its proportionate responsibility for the employee's work-related condition. We find the reasoning of the former Appellate Division in this case persuasive.

[¶ 10] This result is also consistent with the purpose of the early pay system and the Act. Commercial Union's filing of a notice of controversy in the present case would have only extended litigation. There is no evidence to suggest that Dorr's condition was nonwork-related or that the employee's medical treatment was

---

**5.** Section 354 has been amended to permit the Board to determine apportionment issues, P.L.1999, ch. 354, § 9. *See Livingstone v. A–R Cable Servs. of Maine,* 2000 ME 18, ¶ 1, n. 1, 746 A.2d 901, 902, n. 1. Neither party contends that the amended section 354 applies to the present appeal.

unreasonable or unrelated to his work-injuries. Commercial Union's acceptance of liability insured prompt payment of benefits. Moreover, by accepting liability for the injury, Commercial Union takes the risk that, in a subsequent apportionment proceeding, the Board or arbitrator might assign a very small liability, or no liability at all, to a previous insurer. By accepting liability and then proceeding to an apportionment, the insurers are assessed their actual proportionate responsibility for the various injuries, and the goal of prompt payment is achieved.

[¶ 11] The second issue concerns whether Commercial Union should be entitled to seek an apportionment for permanent impairment benefits that it paid pursuant to an approved agreement. Commercial Union suggests that, as the most recent insurer at the time of the agreement in 1991, it was initially liable for all of the employee's benefits, and, therefore, any settlement of benefits must, necessarily, include the responsibility of previous insurers. *See e.g.,* 39 M.R.S.A. § 104–B, *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (Most recent insurer initially liable for all benefits, but may seek apportionment against previous insurers).

[¶ 12] It is unnecessary to determine in this appeal whether an employer can seek an apportionment against a previous insurer when it has settled liability for an employee's entire condition related to all injuries. In this case, the Board found that the settlement agreement was limited to Commercial Union's liability for the January 12, 1989 injury. The Board found that the permanent impairment agreement "establishes that 7% whole person impairment was attributable to the 1989 injury." This finding is consistent with the terms of the written agreement which state that the parties "have reached an Agreement in regard to permanent impairment for the injury sustained by said employee, and submit the following statement of facts relative thereto: 1. Said injury was received on January 12, 1989." The agreement, on its face, only relates to *"the* injury" in January 12, 1989 and does not specify any other injuries. Because the agreement only establishes liability for permanent impairment caused by the injury of January 12, 1989, we agree with the Board's conclusion that Commercial Union is not entitled to seek reimbursement from Liberty Mutual for any permanent impairment derived from a previous injury.

The entry is:

The decision of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this decision.