2001 ME 162

**Robert HOGAN**

v.

**GREAT NORTHERN PAPER, INC.**

Supreme Judicial Court of Maine.

Argued: Nov. 6, 2001.

Decided: Nov. 28, 2001.

Frederick F. Costlow, Esq. (orally), Richardson, Whitman, Large & Badger, P.C., Bangor, for employee.

John A. Woodcock Jr., Esq. (orally), Weatherbee, Woodcock, Burlock & Woodcock, P.A., Bangor, for employer.

Panel: CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Great Northern Paper, Inc., appeals from a decision of a hearing officer of the Workers' Compensation Board, granting Robert Hogan's petition for restoration or workers' compensation benefits. Great Northern contends that it was error for the hearing officer to conclude that negative financial consequences related to Hogan's disability pension made post-injury employment paying more than $100 per week "unavailable" for purposes of determining post-injury earning incapacity. We agree and vacate the hearing officer's decision.

## I. CASE HISTORY

[¶ 2] The basic facts are not disputed. Robert Hogan suffered a serious right arm injury in 1974, while employed by Great Northern. Great Northern paid total incapacity and medical benefits for a period following the injury. Hogan began work for the Canadian Pacific Railroad in 1978, where he remained employed for twenty-one years. During his time with the railroad, Hogan sometimes received medical treatments for his right arm, paid for by Great Northern. In 1997, Hogan began monthly treatment for symptoms in his right hand and forearm, and later psychological treatment for pain and stress management, on referral from his physician.

[¶ 3] Hogan left Canadian Pacific in July 1999. Following the termination of his employment with Canadian Pacific, Hogan received sick pay for a short time. In February 2000, Hogan began receiving

temporary disability benefits of $1,925 per month pursuant to a Canadian Pacific pension plan.

[¶ 4] Hogan filed a petition for restoration of incapacity benefits from Great Northern. The hearing officer concluded that Hogan has a post-injury ability "to engage in full-time light to moderate work with minimal accommodations from an employer." Accordingly, the hearing officer imputed to Hogan an ability to earn $210 per week.

[¶ 5] Because Hogan did not conduct a good-faith work search, the hearing officer concluded that Hogan failed to meet his burden of production to justify an award of 100% partial incapacity benefits. *See Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 587 (Me.1996). For the period following Hogan's receipt of disability benefits, however, the hearing officer concluded that work paying more than $100 per week is "unavailable" to Hogan because of the negative financial consequences that higher earnings would have on Hogan's Canadian Pacific benefits. Under the terms of the Canadian Pacific pension plan, if Hogan receives more than $100 per week in outside employment, his disability payments will be cut in half.[1] The hearing officer affirmed his conclusion in response to Great Northern's motion for further findings of fact and conclusions of law. We granted Great Northern's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (2001).

## II. DISCUSSION

██ [¶ 6] For Hogan's 1974 date of injury, entitlement to partial incapacity benefits is governed by former 39 M.R.S.A. § 55, providing, in pertinent part:

> While the incapacity for work resulting from the injury is partial, the employer

shall pay the injured employee a weekly compensation equal to ⅔ the difference, due to said injury, between his average weekly wages, earnings or salary before the accident and the weekly wages, earnings or salary which he is able to earn thereafter, but not more than ⅔ of the average weekly wage in the State of Maine as computed by the Employment Security Commission; and such weekly compensation shall be adjusted annually on July 1st so that it continues to bear the same percentage relationship to the average weekly wage in the State of Maine as computed by the Employment Security Commission, as it did at the time of the injury . . . .

39 M.R.S.A. § 55 (Supp.1973), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 213, 214 (2001)).

[¶ 7] The concept of an employee being "available" or "unavailable" for work derives from the phrase "able to earn" in the partial incapacity statute. *Bureau,* 678 A.2d at 587. Great Northern contends that it was error for the hearing officer to conclude that work paying more than $100 per week was unavailable because of the negative financial consequences related to Hogan's disability pension with Canadian Pacific. We previously addressed a similar issue in *Longtin v. City of Lewiston,* 1998 ME 90, 710 A.2d 901. In *Longtin,* the employee began receiving disability pension benefits when his injury prevented him from continuing his employment as a firefighter. *Id.* ¶ 2, 710 A.2d at 902. Pursuant to a collective bargaining agreement, if the employee earned more than $10,000 for five years following the injury, he would not be entitled to maximum retirement benefits. *Id.* ¶ 3, 710 A.2d at 902. Seeking to maximize his pension, the em-

---

1. It has yet to be determined whether Hogan will be entitled to permanent disability, but if Hogan is deemed eligible, those benefits will be contingent on Hogan not obtaining any paid outside employment.

ployee refused an offered post-injury job because it paid greater than $10,000 a year. *Id.* ¶ 5, 710 A.2d at 902–03. We affirmed the hearing officer's decision to regard the post-injury employment as available, even though acceptance of the job would adversely affect the employee's retirement. *Id.* ¶¶ 11–12, 710 A.2d at 904–05.

[¶ 8] The hearing officer in the present case attempted to distinguish *Longtin* on two grounds: first, the hearing officer reasoned that the financial consequences were greater in this case than in *Longtin,* second, unlike *Longtin,* there was no specific job offered to the employee.

[¶ 9] These distinctions are not persuasive. Partial incapacity benefits are calculated by determining the difference between the employee's pre-injury average weekly wage and what the employee is "able to earn" after the injury. 39 M.R.S.A. § 55 (Supp.1973), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8. Post-injury "[e]arning capacity is based on (1) the employee's physical capacity to earn wages, and (2) the availability of work within the employee's physical limitations." *Dumond v. Aroostook Van Lines,* 670 A.2d 939, 941 (Me.1996). In all cases involving partial incapacity, including those in which there is no specific job offer or when the employee has failed to conduct a work search, the obligation of the hearing officer is to determine what the employee is "able to earn."

[¶ 10] As we stated in *Longtin,* ¶ 12, 710 A.2d at 905, "[w]hile it cannot be said that [collateral financial] consequences will nev-

er render employment 'unavailable,' the Board's *primary focus pursuant to the goals of the Act must be on whether the employee is capable of performing the employment and whether that employment is actually open to him.*" (emphasis added). *See also Johnson v. Shaw's Distrib. Ctr.,* 2000 ME 191, ¶¶ 14–17, 760 A.2d 1057, 1061. This interpretation of the "able to earn" language supports the principle of mitigation that encourages employees to seek post-injury employment and permits employers to reduce benefits according to what the partially incapacitated employee is able to earn.

 [¶ 11] *Longtin* does not rule out the possibility that negative consequences may, in some extreme cases, render certain post-injury employment "unavailable." However, the fact that an employee's benefit payments from one employer may be reduced, if the employee receives outside income above a set amount, does not render outside work, paying above the set amount, "unavailable" so as to impose a benefit payment obligation on a second employer. The negative financial impact in the present case does not render work paying more than $100 per week unavailable to Hogan.[2]

The entry is:

Decision of the hearing officer of the Workers' Compensation Board vacated. Remanded to the Board for further proceedings consistent with this opinion.

---

**2.** Great Northern also argues that the hearing officer's decision is contrary to our decision in *Bernard v. Mead Publ'g Paper Div.,* 2001 ME 15, ¶ 16, 765 A.2d 576, 581, because the hearing officer calculated the employee's benefits after first inflating his pre-injury average weekly wage for inflation. The employer did

not raise this issue in its petition for appellate review and, therefore, the issue has not been preserved. *See Laskey v. S.D. Warren Co.,* 2001 ME 103, ¶ 31, 774 A.2d 358, 366.